# IN RE BRIAN T., JR.*
## (AC 33073)

Lavine, Robinson and Flynn, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

2

Argued September 7, 2011—officially released February 17, 2012**

---

** February 17, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Doris B. D'Ambrosio,* for the appellant (respondent father).

*Brendon P. Levesque,* with whom were *Dana M. Hrelic* and, on the brief, *Michael S. Taylor,* for the appellees (petitioner Margaret F. et al.).

*Elizabeth K. Adams,* for the appellee (respondent mother).

*Michael F. Miller,* for the minor child.

*Jean Park,* guardian ad litem, for the minor child.

*Opinion*

FLYNN, J. The respondent father, Brian T., Sr., appeals from the judgment of the trial court terminating his parental rights with respect to his minor son, Brian T., Jr. (child). On appeal, the respondent claims that the court improperly (1) determined the respondent abandoned the child, (2) determined the respondent failed to rehabilitate since a 2005 finding that the child had been neglected or uncared for, (3) determined the respondent denied the child the care, guidance and control necessary for the child's physical, educational, moral and emotional well-being, (4) determined the respondent failed to maintain an ongoing parent-child relationship with the child and (5) considered the best interest of the child prior to making findings that the statutory grounds for termination were proved. We affirm the judgment of the trial court on the basis of its findings that the respondent failed to rehabilitate and denied the child the care, guidance and control necessary for the child's well-being.

The following facts, as found by the court, and procedural history are relevant to the respondent's appeal. Pursuant to the authority found in General Statutes § 45a-715 (a) (1) and (2), the mother, Nicole G., and

the maternal grandmother, Margaret F., and stepgrandfather, Charles F., by joining in the mother's petition and as legal guardians of the child, petitioned the court to terminate the parental rights of the respondent. Ultimately the mother withdrew from the termination petition, and the maternal grandmother and stepgrandfather moved to terminate her parental rights as well. The child was born on July 11, 2002, to the respondent and the mother while the respondent was incarcerated at the Carl Robinson Correctional Institution in Enfield.[1] At the time of the child's birth, the mother was fifteen years old and the respondent was twenty-two.[2] Almost two years after the child's birth, his maternal grandmother and stepgrandfather (guardians) obtained formal legal responsibility for his care pursuant to an order of temporary custody entered by the Honorable Thomas P. Brunnock, judge of the Probate Court for the district of Waterbury on March 30, 2004, and were subsequently appointed guardians of the child on January 20, 2005. The respondent served two separate prison sentences during the child's lifetime prior to the commencement of the trial in this matter. He first was incarcerated from March 4, 2002, until his release on January 2, 2004. He was returned to custody on December 10, 2004, and released more than four years later to supervised parole in July, 2009.

Prior to the commencement of this action for termination of parental rights, the respondent was subject to visitation restrictions with the child. Pursuant to those restrictions, the respondent, during his incarceration,

---

[1] The respondent was sentenced to prison after violating the probation conditions resulting from his prior felony convictions of assault in the second degree and the unlawful sale of a controlled substance in violation of General Statutes §§ 53a-60 and 21a-277 (a), respectively.

[2] We note that this finding by the court is erroneous. The record reveals that the mother was born on December 5, 1985, and the child was born on July 11, 2002, making the mother sixteen years of age at the time the child was born.

was allowed only monitored telephone contact with the child. On December 15, 2005, Judge Brunnock, in the Probate Court for the district of Waterbury, subsequently denied all of the respondent's visitation rights.

An application for termination of the respondent's parental rights first was filed by the child's guardians on July 26, 2007, in the Probate Court for the district of Waterbury. That proceeding was transferred to the Superior Court in Waterbury and then to the Juvenile Court in Waterbury, where the court dismissed the application due to insufficient service of process on the respondent when the matter was transferred. On January 14, 2008, the guardians filed again, in the Probate Court for the district of Waterbury, an application to terminate the parental rights of both the respondent and the child's mother, and, on February 5, 2008, Judge Brunnock transferred the matter, pursuant to General Statutes § 45a-623, to the Superior Court at Waterbury. That application, according to the recollection of the respondent's attorney during that proceeding, was withdrawn by the guardians because the application did not contain a statement of facts appended to the petition.

On June 1, 2009, the child's mother filed her own petition in the Probate Court for the district of Old Lyme to terminate the respondent's parental rights, which subsequently was transferred, pursuant to § 45a-715 (g), to the trial court for Juvenile Matters in Waterford shortly thereafter. The petition contained the following allegations that are relevant to this appeal: the respondent (1) had abandoned the child, (2) failed to achieve a degree of personal rehabilitation sufficient to assume a responsible position in the child's life, (3) denied the child the care, guidance and control necessary for the child's well-being and (4) failed to maintain an ongoing parent-child relationship. On October 20, 2009, the guardians filed a motion to substitute themselves as the petitioners in this action, which was granted by the

court, *Driscoll, J.* The newly substituted petitioners then submitted an amended application for termination of parental rights on January 11, 2010, that added a provision indicating the mother's desire and consent to terminate her own parental rights should the court grant the original petition to terminate the respondent's parental rights. A trial management conference was scheduled for March 9, 2010, and the matter formally was transferred to the Child Protection Session at Middletown, where the court, *Hon. Thayer Baldwin, Jr.,* judge trial referee, heard the petition to terminate the parental rights of the mother and the respondent on August 4 and 5, 2010. The child was eight years old at the time trial commenced.

After two days of hearing witness testimony and considering the briefs filed by both parties, the court issued its ruling on January 10, 2011. As to the claim of abandonment, the court found that the respondent had abandoned the child "by denying his parenthood for a period of five years and engaging in criminal activity that precluded active parenting . . . ." The court reasoned that the respondent's prolonged incarceration, initial disavowal of paternity and the little attention he paid to the child were sufficient to constitute abandonment. Accordingly, the court ordered that his parental rights be terminated.

The court next considered the petitioners' claim that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that he could assume a responsible position in the child's life. The court observed that the respondent had eight years since the child's birth to be available to assume a responsible position in the child's life. The court further determined that the respondent had failed to achieve a sufficient degree of personal rehabilitation during the period since the Probate Court for the district of Waterbury had found, in a January, 2005 proceeding,

that the child had been neglected or uncared for by the respondent. The court concluded that, during this time, the respondent failed to make himself available as a resource for the mother or the child and that he did not contribute significantly to the child's care and maintenance. The court therefore ordered that the respondent's parental rights be terminated for his failure to achieve sufficient personal rehabilitation as would encourage the belief that, within a reasonable time and considering the age and needs of the child, he could assume a responsible position in the child's life.

The court then analyzed, in accordance with General Statutes § 45a-717 (g) (2) (B), the petitioners' claim that the respondent denied the child the parental care, guidance or control necessary for the child's physical, educational, moral or emotional well-being by reason of acts of parental commission or omission. The court found, by clear and convincing evidence, that the respondent's criminal acts, incarceration and lack of attention he paid to the child during the child's infancy was sufficient to satisfy this statutory ground for termination.

Finally, the court considered the petitioners' claim that no ongoing parent-child relationship, pursuant to § 45a-717 (g) (2) (C), existed between the respondent and the child. The court found that the conditions of the Waterbury Probate Court orders restrained the petitioner's contact with the child to such a degree that they "limited the possibility of true bonding between [the respondent] and [the] [c]hild." Although the respondent sustained a relationship, of sorts, with the child through "cards, letters, and telephone contact," which the court reasoned might have put the respondent in a position to turn his life around and play an important future role in the child's life, the court ultimately concluded that the respondent had not had the opportunity to form a strong emotional bond with the

child. Additionally, the court determined that the ongoing conflict between the two families would preclude the formation of such a relationship and prove detrimental to the child's best interest. Consequently, the court ordered that the respondent's parental rights be terminated on the ground that no ongoing parent-child relationship existed and that to allow further time for the establishment of such a relationship would prove detrimental to the best interest of the child. This appeal followed.

Pursuant to Practice Book § 60-5, and Practice Book § 60-2 (1) of the rules of appellate procedure, which provides that a reviewing court may, "on its own motion or upon motion of any party, (1) order a judge to take any action necessary to complete the trial record for the proper presentation of the appeal," the Appellate Court sua sponte ordered the court to specify and articulate whether all of the factual references in the "testimony" and "discussion" sections of the memorandum of decision were findings of fact. On October 6, 2011, the trial court issued the requested articulation. The following factual findings from that articulation are relevant to our review: (1) after the birth of the child, the respondent came to visit four or five times and spent very little time with the child, (2) the respondent controlled the mother's key decisions through violence and intimidation, (3) the respondent refused to acknowledge paternity formally for fear of prosecution on charges of statutory rape, (4) the respondent told the mother not to seek court-ordered child support, (5) the guardians agreed to assume full responsibility for care and nurturing of the child, (6) the mother had an uncomfortable and sometimes violent relationship with the respondent, (7) the child's therapist expressed her opinion that the child needs to be in a secure environment and that removal from the care of the guardians would be detrimental to his best interest, (8) the respondent

engaged in criminal activity that kept him in prison for the first seven years of the child's life and (9) the respondent failed to rehabilitate during the first seven years of the child's life.

The following legal principles inform our review. Section 45a-715 (a) (2) permits "the guardian of a child" to petition the Probate Court to terminate parental rights. The grounds include abandonment "in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child"; General Statutes § 45a-717 (g) (2) (A); or failure to rehabilitate when "the parent of a child, who (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and such parent has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." General Statutes § 45a-717 (g) (2) (D). An additional ground for termination exists when a parent has denied his child the care, guidance or control necessary for the child's physical, educational or emotional well-being pursuant to § 45a-717 (g) (2) (B). Termination of parental rights can also be brought on the grounds that "there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of the parent-child relationship would be

detrimental to the best interests of the child . . . ." General Statutes § 45a-717 (g) (2) (C).

"Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children undeniably warrants deference and, absent a powerful countervailing interest, protection." (Internal quotation marks omitted.) *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 640, 436 A.2d 290 (1980). In order to terminate a parent's parental rights under § 45a-717, the petitioner is required to prove, by clear and convincing evidence, that any one of the seven grounds for termination delineated in § 45a-717 (g) (2) exists and that termination is in the best interest of the child. General Statutes § 45a-717 (g) (1). Only four of these statutory grounds were found by the court and are pertinent to this appeal. They are (1) abandonment, (2) failure to rehabilitate, (3) denial of the care, guidance and control necessary for the child's physical, educational, moral and emotional well-being and (4) lack of an ongoing parent-child relationship.

"It is axiomatic that a trial court's factual findings are accorded great deference. Accordingly, an appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *In re S.D.*, 115 Conn. App. 111, 116, 972 A.2d 258 (2009).

"We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony, and may

accept part, all or none of the testimony. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *In re Kamora W.*, 132 Conn. App. 179, 186, 31 A.3d 398 (2011).

A hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more grounds for termination of parental rights set forth in General Statutes §§ 17a-112 or 45a-717 (g) (2) has been proven by clear and convincing evidence.[3] If the trial court determines that at least one of the statutory grounds for termination has been proved, then it proceeds to the dispositional phase. *In re Melody L.*, 290 Conn. 131, 163, 962 A.2d 81 (2009). In the dispositional phase, there must be a showing by clear and convincing evidence whether termination is in the best interests of the child. See *In re Davonta V.*, 285 Conn. 483, 487–88,

---

[3] The parties erroneously reference § 17a-112 instead of § 45a-715 in their respective briefs. Section 17a-112 applies only to petitions for termination of parental rights for children committed to the custody of the Commissioner of Children and Families, while § 45a-715 (a) (2) allows, as in this case, the child's legal guardians to bring the petition. This error, however, is not fatal to the parties' arguments. We note that § 17a-112 (j) (3) permits the termination of parental rights based upon the same identical seven grounds for termination authorized under § 45a-717 (g). This court previously has applied the same analytical framework and meaning of abandonment and lack of ongoing parent-child relationship to petitions to terminate parental rights pursuant to either § 17a-112 (j) (3) (A) and (D) or § 45a-717 (g) (2) (A) and (C). See *In re Lukas K.*, 120 Conn. App. 465, 483 n.10, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011). We therefore incorporate our prior interpretations of § 17a-112 (j) (3) (A) and (D) into our analysis of § 45a-717 (g) (2) (A) and (C) accordingly.

940 A.2d 733 (2008); *In re Lukas K.*, 120 Conn. App. 465, 484, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011).

The court found that four grounds had been proved: abandonment, failure to rehabilitate, denial of the care, guidance and control necessary for the child's physical, educational, moral and emotional well-being, and lack of an ongoing parent-child relationship. We first address abandonment.

I

The petitioners alleged in their petition for termination of parental rights that the child had been abandoned by the respondent "in the sense that he has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." The court found that the respondent had abandoned the child. We disagree with the court's finding.

"General Statutes § 45a-717 (f) [now § 45a-717 (g) (2) (A)] defines abandonment as the fail[ure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." (Internal quotation marks omitted.) *In re Ashley E.*, 62 Conn. App. 307, 314, 771 A.2d 160, cert. denied, 256 Conn. 910, 772 A.2d 601 (2001).

The court observed that the "facts in this regard are inconsistent." Specifically, the court found that the respondent was twenty years old when he conceived a child with a girl who was fourteen years old at the

time. He told the mother that he would not allow consideration of an abortion, but he disavowed his paternity for five years in order to avoid prosecution for statutory rape. Furthermore, he engaged in criminal activity that resulted in his incarceration for the first seven years of the child's life. The court acknowledged that the respondent attempted to maintain a relationship with the mother, but all of the evidence indicated that he paid little attention to the care of the child. After the statute of limitations expired, he finally acknowledged paternity and demanded his paternal rights. The court found by clear and convincing evidence that, taken together, the disavowal of paternity and the behavior that resulted in his extended incarceration constituted abandonment.

The respondent claims that the court's finding is clearly erroneous. We agree that certain aspects of the court's predicate factual findings are clearly erroneous, namely, the finding that the respondent denied his paternity for the first five years of the child's life and that he was in prison for the first seven years of the child's life. According to the dates of birth provided on the June 1, 2009 application for termination of parental rights, the respondent was twenty-one and the mother was fifteen at the time the child was conceived. The mother was also sixteen, not fifteen years old as the court observed, when the child was born. As the respondent points out, the child was born on July 11, 2002. Pursuant to his motion for genetic testing, the respondent did not deny formally his paternity until December 5, 2003, almost seventeen months after the child was born. The results of the genetic testing confirmed, to a 99.9 percent degree of accuracy, that the respondent was the father of the child, and the court, acting by John E. Collela, family support magistrate, rendered a judgment of paternity on February 27, 2004. There is

nothing in the record indicating the respondent's continuing denial of paternity after that testing and judgment. In a letter to Judge Brunnock, received on December 14, 2005, the respondent referred specifically to the child as his son. The trial court's finding that the respondent denied paternity for the first five years of the child's life is, therefore, clearly erroneous.

In its orders, the court stated that it was terminating the respondent's parental rights, "[h]aving found that the [respondent] abandoned [the] [c]hild by denying his parenthood for a period of five years and engaging in criminal activity that precluded active parenting . . . ." Incarceration alone does not suffice to show abandonment. *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982). Further, although the length of time of the denial of paternity found is material, there is no evidence that the respondent denied paternity for five years or until the statute of limitations expired for statutory rape, as found by the court. The length of time of incarceration also is material, and the finding that the respondent was incarcerated for the first seven years of the child's life is clearly erroneous. The record reveals that the respondent was first incarcerated for almost twenty-two months from March 4, 2002, until his release on January 2, 2004. He was then incarcerated from December, 2004, until July, 2009, for an additional period of approximately fifty-five months. Consequently, his total time of incarceration was approximately six years and five months. Given that the child was not born until July 11, 2002, the respondent was incarcerated only for a total period of approximately six years and one month during the first seven years of the child's life. Because the abandonment finding rests on grounds infected by clear error, we look to the other grounds found to determine if they properly support termination.

## II

The petitioners also alleged that the respondent's parental rights should be terminated on the basis that the respondent has failed to rehabilitate since the January, 2005 finding by the Waterbury Probate Court that the child had been neglected and uncared for. Specifically, the petitioners alleged that the respondent "has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time and considering the age and needs of the child, [the respondent] could assume a responsible position in the life of the child." We affirm the trial court's judgment that the respondent has failed to rehabilitate.

The court found that the respondent had failed to rehabilitate pursuant to § 45a-717 (g) (2) (D). Section 45a-717 (g) provides in relevant part: "[T]he court may approve a petition [for termination of parental rights] . . . if it finds, upon clear and convincing evidence, that (1) the termination is in the best interest of the child and (2) . . . (D) the parent of a child who (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

The respondent disagrees with the court's finding that he has failed to rehabilitate. He argues that the court erroneously based its finding of failure to rehabilitate solely on the respondent's incarceration and attitude toward the child. The respondent further notes that his current employment, release from prison in 2009 and his completion of parenting, drug addiction

prevention and anger management classes demonstrate sufficient rehabilitation to justify the preservation of his parental rights, but that the child's maternal grandmother has prevented him from maintaining a place in the child's life. We disagree with the respondent.

This court has never considered previously a claim of failure to rehabilitate pursuant to § 45a-717 (g) (2) (D). This court has considered, however, numerous claims of failure to rehabilitate pursuant to § 17a-112 (j) (3) (B). See generally *In re Kamora W.*, supra, 132 Conn. App. 186–87; *In re Gianni C.*, 129 Conn. App. 227, 233–38, 19 A.3d 233 (2011); *In re Janazia S.*, 112 Conn. App. 69, 90–96, 961 A.2d 1036 (2009). Because the statutory language in §§ 45a-717 (g) (2) (D) and 17a-112 (j) (3) (B) virtually is identical, we apply the same meaning and analytical framework from § 17a-112 (j) (3) (B) to our analysis and interpretation of § 45a-717 (g) (2) (D).

"Personal rehabilitation, as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Jordan T.*, 119 Conn. App. 748, 756, 990 A.2d 346, cert. denied, 296 Conn. 905, 992 A.2d 329 (2010). "[The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation . . . achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [the respondent] can assume a responsible position in [the] child's life." (Internal quotation marks omitted.) *In re Alejandro L.*, 91 Conn. App. 248, 259, 881 A.2d 450 (2005).

Pursuant to both the temporary custody decree and the removal of guardianship decree, the child was found

to have been neglected because he was "denied the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being." The court determined that the respondent had sufficient time over the first eight years of the child's life to assume a responsible position and that, during those years, he failed to assume such a position by not contributing to the care and maintenance of the child or by making himself available as a resource for the mother or the child. Between March 4, 2002, and the time the petition for termination of parental rights was filed on June 1, 2009, the respondent spent only a minimal amount of time outside of prison. His second prison sentence during that span of time was triggered not by a violation of probation, but by the commission of a separate felony for possession and sale of a controlled substance. When asked on cross-examination as to the level of his responsibility for being sentenced to a six year prison term when the child was just two years old, the respondent admitted: "[A] hundred percent I'm responsible for going to jail and, you know, not being the father I should be. A hundred percent." This record admission of lack of parental responsibility is telling. While it is commendable that the respondent has undertaken parenting and anger management classes since his release from prison in June, 2009, the respondent's extensive criminal history and poor judgment over the vast majority of the child's life does not encourage a belief that he is ready to assume a responsible position in the child's life either now or at some future point in time.

### III

The petitioners next assert that the respondent denied the child the care, guidance and control necessary for the child's physical, educational, moral and emotional well-being.

"The [deprivation of care, guidance or control] statute rests on two distinct and often contradictory interests [of the child]. The first is a basic interest in safety; the second is the important interest . . . in having a stable family environment." (Internal quotation marks omitted.) *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992). In light of the record before us, the court could have reasonably concluded that the respondent deprived the child the care, guidance and control necessary for the child's well-being. The court's conclusion rested, in part, on its express findings that the respondent's extensive criminal history, prolonged incarceration and the scheduling of only one visitation with the child for a period of fifteen minutes during the respondent's incarceration were sufficient to demonstrate the respondent's denial of parental care, guidance or control for the child's well-being. In his challenge to the court's conclusion, the respondent merely asserts in a catch-line in the initial summary of his argument that the court committed error in its determination without providing any analysis of the claim in his brief. The respondent does not point us to any claimed clear error in the court's factual findings relating to the grounds of termination, nor does he point us to any error of law. After having reviewed the court's findings and the record before us, we conclude that this claim has no merit.[4]

## IV

We turn finally to the respondent's claim that the court improperly considered the best interest of the

[4] The petitioners also claim that the respondent's parental rights should be terminated on the ground that there is no ongoing parent-child relationship between the petitioner and the child pursuant to § 45a-717 (g) (2) (C). The respondent claims that the court improperly determined that he failed to maintain an ongoing parent-child relationship. Having determined that the court properly terminated on grounds of failure to rehabilitate and denial of proper care, guidance and control, we need not address this last claim. We may affirm the judgment if we find that the court properly concluded that any one of the statutory circumstances existed. *In re Shaun B.*, 97 Conn. App. 203, 214, 903 A.2d 246 (2006).

child before considering whether the statutory grounds for termination had been proven. We disagree and conclude that the court appropriately decided that termination was in the child's best interest after determining that the statutory grounds for termination existed.

The respondent correctly notes that termination of parental rights cannot be based solely on a finding that such termination is in the child's best interest. This court recently held that "[i]f the court finds that the petitioner has proven by clear and convincing evidence that one of the statutory grounds for termination of parental rights exists, it must then determine whether termination is in the best interests of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 45a-717 (h)]." (Internal quotation marks omitted.) *In re Jaime S.*, 120 Conn. App. 712, 733–34, 994 A.2d 233 (2010), appeal dismissed, 300 Conn. 294, 12 A.3d 566 (2011). Our Supreme Court has also made clear that determination of the child's best interests is to be examined "only after statutory grounds for [nonconsensual] termination of parental rights have been established by clear and convincing evidence." (Internal quotation marks omitted.) *In re Bruce R.*, 234 Conn. 194, 204, 662 A.2d 107 (1995). The essence of the respondent's argument is that "the issue of best interest as to termination cannot be argued or addressed unless the [c]ourt finds that [the maternal grandparents] have been successful in proving their case as to the grounds of their

[p]etition." If one were to look only at the memorandum of decision, concerning the statutory grounds for termination, we might agree. Although the court's memorandum of decision and subsequent articulation makes findings ad seriatim, and some findings regarding the child's best interest precede findings that statutory grounds for termination exist, the memorandum of decision must be read in conjunction with the order regarding termination of parental rights. That order, which is separate from the memorandum, clearly addresses, by a finding of clear and convincing evidence, the four grounds it found for termination. Only after setting forth these grounds does it make an express finding, by clear and convincing evidence, that termination of parental rights is in the best interest of the child.

When we look at the separate signed order terminating parental rights, we find that the court's findings regarding the statutory grounds for termination—that (1) the mother consented to termination, (2) the child has been abandoned by the respondent, (3) the child has been found in a prior proceeding to have been neglected or uncared for and the respondent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the child's life, (4) the child has been denied, by reason of an act or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being and (5) there is no ongoing parent-child relationship—precede the best interest findings. Only after the statutory grounds are set forth does the court enter its dispositional finding that there is "clear and convincing evidence that termination of parental rights is in the best interests of the [child]" and grant the order of termination. The court's order of termination and disposition clarifies that it had found

grounds for statutory termination before finding that termination was in the best interest of the child.

The judgment is affirmed.

In this opinion the other judges concurred, except as noted in their separate concurrences.

LAVINE, J., concurring. I agree that the judgment of the trial court terminating the parental rights of the respondent, Brian T., Sr., on the ground of failure to rehabilitate should be affirmed. Proof of one ground is sufficient to terminate parental rights. See *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003). I therefore would not address the respondent's abandonment claim.

For the foregoing reasons, I respectfully concur.

ROBINSON, J., concurring. I agree with the majority that the trial court's judgment should be affirmed on the basis of its finding that the respondent, Brian T., Sr., denied his minor child, Brian T., Jr., the care, guidance and control necessary for the child's well-being. I further agree with Judge Lavine's concurring opinion that proof of one ground is sufficient to terminate parental rights; see *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003); and, because of that principle, I ordinarily would not address the respondent's claims regarding abandonment, failure to rehabilitate and the lack of an ongoing parent-child relationship, other statutory grounds on which the trial court terminated his parental rights. Nevertheless, I write separately to express my concerns regarding the use of failure to rehabilitate as a basis to terminate the respondent's parental rights, as it was done in this matter. Specifically, I believe there should be symmetry between the termination of parental rights procedure that was followed in this matter and the procedure under the provisions of General Statutes § 17a-112 (j) (3) (B). When a

child has been adjudicated neglected or uncared for, the court should order specific steps for the parent to take to facilitate the child's return to the parent. No specific steps were ordered for the respondent in this case. Further, I believe that in determining whether a parent has achieved a degree of personal rehabilitation such that he could assume a responsible position in the child's life within a reasonable time, a court should focus on the time period subsequent to when a neglect proceeding was conducted.

As I noted in the matter of *In re Jason R.*, 129 Conn. App. 746, 774, 23 A.3d 18 (*Robinson, J.*, dissenting), cert. granted, 302 Conn. 924, 28 A.3d 339 (2011), the termination of an individual's parental rights is one of the most drastic actions that a state must take against its citizens. "The termination of parental rights is defined as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . . It is a most serious and sensitive judicial action. . . . Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children undeniably warrants deference and, absent a powerful countervailing interest, protection." (Internal quotation marks omitted.) Id. Accordingly, it is through this judicial lens that this court must thoroughly review the termination of an individual's parental rights.

General Statutes § 46b-129 (a) provides that an interested party may file in the Superior Court a petition stating that a child has been neglected, uncared for or abused. Section 46b-129 (j) provides that upon a finding that a child is uncared for, neglected or abused, a court may commit that child to the custody of the commissioner of children and families, or vest legal guardianship of the child in someone other than the parent. Section 46b-129 (j) also provides that "[t]he court shall

*order specific steps that the parent must take to facili-
tate the return of the child or youth to the custody of
such parent . . . ."* (Emphasis added.)

Under General Statutes § 45a-717 (g) (2) (D),[1] a Pro-
bate Court may approve a petition terminating the
parental rights of an individual if it finds upon clear
and convincing evidence that "the parent of a child who
(i) has been found by the Superior Court or the Probate
Court to have been neglected or uncared for in a prior
proceeding, or (ii) is found to be neglected or uncared
for and has been in the custody of the commissioner
for at least fifteen months and such parent has been
provided specific steps to take to facilitate the return
of the child to the parent pursuant to section 46b-129
and has failed to achieve such degree of personal reha-
bilitation as would encourage the belief that within a
reasonable time, considering the age and needs of the
child, such parent could assume a responsible position
in the life of the child . . . ."

Generally, a Superior Court has sole jurisdiction
under § 46b-129 to determine, pursuant to that section,
if a child has been neglected, and to order specific steps
for the parent to take to facilitate the child's return to
the parent. *In re Juvenile Appeal (85-BC)*, 195 Conn.
344, 366, 488 A.2d 790 (1985). It appears from the record
that no petition alleging neglect was filed pursuant to
§ 46b-129 (a). It appears, rather, that the Probate Court
determined that the child had been neglected and
uncared for in deciding whether to remove the respon-
dent and the child's mother, Nicole G., as guardians of
the child. The Probate Court, however, did not order
specific steps for the respondent to take in order to
facilitate the child's return to the respondent.

---

[1] As the majority noted, the statutory language set in § 45a-717 (g) (2) (D)
and § 17a-112 (j) (3) (B) is identical; thus, prior analysis under § 17a-112 (j)
(3) (B) will be used to analyze § 45a-717 (g) (2) (D).

This court has concluded that when termination of parental rights is sought under § 17a-112 (j) (3) (B), a failure to order specific steps under § 46b-129 (j) would preclude termination for failure to achieve personal rehabilitation. *In re Justice V.*, 111 Conn. App. 500, 510, 959 A.2d 1063 (2008), cert. denied, 290 Conn. 911, 964 A.2d 545 (2009). In the matter of *In re Justice V.*, after a finding of child neglect, the commissioner of children and families sought to terminate the mother's parental rights on the basis of abandonment and failure to rehabilitate. Id., 504 n.4. The mother claimed that when the child was adjudicated neglected, the court failed to provide her with specific steps pursuant to § 46b-129 (j). Id., 505. This court noted that § 46b-129 (j) requires specific steps be provided to the parent and that "[p]ersonal rehabilitation, therefore, is to be determined, in part, by compliance with those specific steps, *which give the parent fair warning of what is required . . . to be reunited with the child.*" (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 507. The court concluded that "given the requirement of § 17a-112 (j) (3) (B), a failure to order specific steps would preclude termination for a failure to achieve sufficient personal rehabilitation" but that because parental rights were properly terminated on the ground of abandonment, the trial court's error did not result in manifest injustice. Id., 510.

I believe that parental rights should not be terminated under § 45a-717 (g) (2) (D), for failure to rehabilitate, when specific steps were not ordered for the parent. Although the Probate Court did not find that the child was neglected or uncared for under § 46b-129, and, thus, arguably was not required to provide specific steps for the respondent, fairness dictates that in order to terminate parental rights due to a failure to rehabilitate, specific steps should be ordered for a parent whose child has been found neglected or uncared for. The

court provides specific steps to a parent to apprise that individual of the steps that will assist the parent to be reunited with the child. If no steps are provided to a parent, that parent will not be aware of the benchmarks he or she should strive to meet. While it is true that a court's determination regarding whether a parent has achieved personal rehabilitation can take into account more than whether that individual has met the specific steps provided to the individual, the specific steps still act as a guide to parents seeking to reunite their families. See *In re Allison G.*, 276 Conn. 146, 161, 883 A.2d 1226 (2005) ("[a]lthough the specific steps provide a benchmark by which the court measures whether either reunification or termination of parental rights is appropriate, the court necessarily will consider the underlying [neglect] adjudication and the attendant findings"). The specific steps are intricately intertwined with the failure to rehabilitate, as indicated by the statutory language in all three of the relevant statutory provisions. Accordingly, I believe that in order to terminate parental rights on the basis of a failure to rehabilitate, that parent should be provided with specific steps to take to facilitate the return of the child. As the respondent was not provided with specific steps, I find it troubling that his parental rights were terminated on the basis of a failure to rehabilitate.

Furthermore, I believe that in determining whether a parent has failed to rehabilitate, a court should focus on the actions of the parent because the child was found to have been neglected or uncared for. "[T]he adjudicatory determination to be made by the trial court is whether the parent of a child who has been found by the [S]uperior [C]ourt to have been neglected [or] uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could

assume a responsible position in the life of the child. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . .

"Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue. . . . Thus, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child." (Citations omitted; internal quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 254–55, 829 A.2d 855 (2003).

The language of § 45a-717 (g) (2) (D) provides that parental rights may be terminated when a child has been adjudged neglected and uncared for and the parent has "failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." On the basis of this language, it appears that the court should examine the actions of the parent *since* the neglect proceeding in determining whether the parent has failed to rehabilitate. See *In re Hector L.*, 53 Conn. App. 359, 367, 730 A.2d 106 (1999)

("[a]t the adjudicatory phase of the termination hearing, the ultimate issue faced by the trial court was whether the respondent was better able to resume the responsibilities of parenting at the time of filing the termination petition than he had been at the time of the children's commitment"). Although a court may consider events that preceded the finding of neglect, such consideration should only be in the context of determining whether such individual has taken steps toward rehabilitation. See *In re Vincent D.*, 65 Conn. App. 658, 670, 783 A.2d 534 (2001) ("[i]In determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department"). Termination of parental rights on the ground of failure to rehabilitate essentially means that since the time the child was adjudged neglected or uncared for, the respondent has not demonstrated a change in his or her life that is sufficient to allow him or her to maintain parental rights.

In reaching its conclusion that the respondent's parental rights should be terminated on the ground of a failure to rehabilitate, the court found that the "[respondent] had *eight years* during which he might have been available to assume a 'responsible position in [the] [c]hild's life.' During those years, he neither made himself available as a resource for [the] [m]other or [the] [c]hild [n]or significantly contributed to the care and maintenance of [the] [c]hild. Furthermore, he has demonstrated resentment of the role that [the maternal grandparents] have played in their care and nurture of [the] [c]hild. [The] [c]hild is closely bonded and fully committed to his maternal grandparents, his [m]other and [a]unt. His guardians have supported his relationship with his paternal grandparents but reserve

their judgment as to whether [the respondent] is committed to acceptance of the nature of his future role in [the] [c]hild's life. He carries the heavy burden of proving to [the maternal grandparents] that his life has changed and he can play a positive role in his son's development. He must recognize that [the maternal grandparents] will be making the decision in [the] [c]hild's life. The court finds by clear and convincing evidence that [the respondent] *has failed to rehabilitate over the first seven years of [the] [c]hild's life* and that the age and needs of [the] [c]hild require that [the maternal grandparents] continue in the parental role in which they have served." (Emphasis added.)

The court's primary reason for terminating the respondent's parental rights on the basis of a failure to rehabilitate was that for the first seven years of the child's life, the respondent failed to assume a responsible position. The court should have asked whether the respondent had achieved a degree of personal rehabilitation *since* the finding that the child was neglected and uncared for, as would encourage the belief that in a reasonable amount of time he could assume a responsible position in his son's life. I am concerned that the court simply grouped the first seven years of the child's life together in determining that the respondent has failed to rehabilitate. The child was adjudicated neglected or uncared for in January, 2005. I believe that the court should have primarily focused on the years since that proceeding to determine whether the respondent had taken steps toward rehabilitation so that he could assume a responsible position in the child's life.[2] Accordingly, I respectfully concur.

---

[2] For example, the respondent completed a Tier II Living in Balance class and an eleven week Embracing Fatherhood program in 2006. In addition, the respondent completed an eight week anger management program and a nine week active parenting now program in 2009 after the petition was filed. The court, however, noted none of these accomplishments in its decision to terminate parental rights on the basis of a failure to rehabilitate.