******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE PAYTON V.*

IN RE MADDY V.
(AC 37294)

Gruendel, Alvord and Mullins, Js.

*Argued April 6—officially released June 10, 2015***

(Appeal from Superior Court, judicial district of New London, Juvenile Matters at Waterford, Driscoll, J.)

*David J. Reich*, for the appellant (respondent).

*Joshua Michtom*, assistant public defender, for the appellee (petitioner).

*Opinion*

MULLINS, J. The respondent father appeals from the judgments of the trial court terminating his parental rights as to his children, Payton and Maddy. On appeal, the respondent claims that (1) the court's factual findings did not support its legal conclusion pursuant to General Statutes § 45a-717 (g) (2) (B), and (2) there was insufficient evidence to support the court's conclusion that it was in the best interest of the children to terminate his parental rights because the petitioner, the children's mother, did not testify.[1] We affirm the judgments of the trial court.

The following facts, as found by the trial court, and relevant procedural history inform our review. The respondent and the petitioner married on May 14, 2006, when the petitioner was eighteen years old and the respondent was twenty-seven years old. Two children were born of the marriage, a daughter, Payton, who was born in July, 2006, and a son, Maddy, who was born in September, 2007. The marriage of the parties was dissolved on February 18, 2011, and the parties were awarded joint legal custody of the children, with primary physical custody awarded to the petitioner. Both parties have since remarried.

The respondent "visited regularly with his children until March 24, 2012. . . . On March 24, 2012, Maddy [who was four years old] and Payton [who was five years old] were in [the respondent's] home during their regularly scheduled visit. At some point during the day, the children were alone with [the respondent] and Maddy was subjected to what [the respondent] told the police, the Department of Children and Families' . . . worker (department), and the court was corporal punishment for sneaking out of the house, running into the road, and almost being struck by a car. [The respondent] claimed he spanked the child, and he told the police that he may have hit Maddy too hard. The child told the police, in a very incomplete way, that he was punished for looking into a dresser drawer. [The respondent] beat his child severely [on] the buttocks and lower back. He did so with a belt. Payton heard Maddy screaming, though she was not present to watch the beating. [The respondent] did not disclose the incident to his wife until the night of March 24, 2012. [The respondent] was bathing Maddy and brought his wife in to observe the severe bruising on the boy's buttocks and back. [His wife] made [the respondent] call [the petitioner]. [The respondent] crying, told [the petitioner that] he'd hurt Maddy. [The petitioner went to the respondent's] residence after calling the police. Several police officers responded, and [the respondent] was observed crying and remorseful. [The respondent] admitted causing Maddy's injury . . . [and he] was arrested. [The petitioner] accompanied Maddy to the hospital [where] Maddy was seen, treated, and released. Maddy was diag-

nosed with contusions on his buttocks and back, and both were tender to palpation.

"[The respondent] claimed [to the police that] he only struck Maddy with his hand three times on [the] buttocks. He was distraught in the presence of the police, and said he did not think he hit Maddy so hard. . . . [Maddy] told the police that his father hit him with a belt, and [the respondent] coached him to blame the injury on the cats. Payton told [the department that the respondent] hit Maddy with a belt. . . . The emergency room physician told the police that 'it looks like this kid got the tar beat out of him. There is no way he was only hit three times.' [Maddy's] pediatrician opined that the bruises across Maddy's buttocks and back were consistent with being beaten numerous times with a metal belt."[2] The respondent has not seen Maddy or Payton since March 24, 2012.

On November 6, 2012, the petitioner filed petitions to terminate the parental rights of the respondent in the New London Regional Children's Probate Court. An attorney was appointed for the children, and he filed a motion to transfer the case to the Superior Court for Juvenile Matters. That motion was granted on December 19, 2012. All parties were represented by counsel. The petitioner sought termination of the respondent's parental rights as to both children on the basis of § 45a-717 (g) (2) (B).[3] Following a hearing on the merits, the court granted the petition, concluding that the respondent had administered an intentional, nonaccidental severe beating to Maddy that amounted to "severe physical abuse caused by an act of parental commission." The court further found that, as a result of the respondent's severe physical abuse of Maddy, perpetrated as Payton listened to her brother's screams, he was arrested, convicted and sent to prison, and that this has resulted in his denial of "financial support . . . emotional support . . . [and] guidance . . . ." The court stated that the respondent "was removed from his children's lives because of [his] intentional act of severe physical abuse and for no other cause."[4] Accordingly, the court concluded that the adjudicatory ground of § 45a-717 (g) (2) (B) had been established by clear and convincing evidence.

The court then considered whether it was in the best interest of the children for the respondent's parental rights to be terminated. The court examined and considered the factors set forth in § 45a-717 (h). The court found, in relevant part, that the children no longer have a relationship with the respondent, that Payton is extremely anxious and is caused considerable distress at the mention of the respondent, and that the children do not want the respondent in their lives. Additionally, the court found that, although the respondent engaged in individual counseling and a course in anger management, he consistently has attempted to minimize and

misrepresent the severity of his physical abuse. Ultimately, on the basis of its factual findings, the court concluded that termination of the respondent's parental rights was in the children's best interest.[5] Accordingly, the court granted the petitions. This appeal followed. Additional facts will be set forth as necessary.

The respondent claims that the court's factual findings did not support its legal conclusion pursuant to § 45a-717 (g) (2) (B), and that there was insufficient evidence for the court to have concluded that termination of his parental rights was in the best interest of the children. After setting forth the relevant law, we will consider each of these claims.

Section 45a-717 (g) provides in relevant part: "At the adjourned hearing or at the initial hearing where no investigation and report has been requested, the court may approve a petition terminating the parental rights and may appoint a guardian of the person of the child, or, if the petitioner requests, the court may appoint a statutory parent, if it finds, upon clear and convincing evidence, that (1) the termination is in the best interest of the child, and (2) . . . (B) the child has been denied, by reason of an act or acts of parental commission or omission, including, but not limited to sexual molestation and exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ."

"A hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more grounds for termination of parental rights set forth in General Statutes §§ 17a-112 or 45a-717 (g) (2) has been proven by clear and convincing evidence." *In re Brian T.*, 134 Conn. App. 1, 11, 38 A.3d 114 (2012).

"In the dispositional phase . . . the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [her] environment. . . . [T]he trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding [the] factors delineated in [§ 45a-717 (h)]. . . . [These] factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no require-

ment that each factor be proven by clear and convincing evidence." (Internal quotation marks omitted.) *In re Mindy F.*, 153 Conn. App. 786, 796–97, 105 A.3d 331 (2014), cert. denied, 315 Conn. 913, 106 A.3d 307 (2015).

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [the challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Kylik A.*, 153 Conn. App. 584, 594, 102 A.3d 141, cert. denied, 315 Conn. 902, 104 A.3d 106 (2014).

The respondent claims that the court's factual findings did not support its legal conclusion pursuant to § 45a-717 (g) (2) (B). He argues that the petitioner needed to prove that there was an act of parental omission or commission and that the children were denied care, guidance or control as a result of that act. In this case, he argues, the children were provided care, guidance and control *by the petitioner* and, therefore, they never were without such care. Accordingly, he argues, the court erred as a matter of law in concluding that the requirements of § 45a-717 (g) (2) (B) had been established by the petitioner. We disagree.

As we have explained previously: "The [deprivation of care, guidance or control] statute rests on two distinct and often contradictory interests [of the child]. The first is a basic interest in safety; the second is the important interest . . . in having a stable family environment. . . . *In re Valerie D.*, 223 Conn. 492, 512, 613 A.2d 748 (1992)." (Internal quotation marks omitted.) *In re Brian T.*, supra, 134 Conn. App. 18; id. (affirming trial court's decision that, due to respondent's criminal history, incarceration and lack of visits with child, respondent had denied child parental care, guidance or control necessary for child's well-being).

In the present case, the court found that the respondent's act of commission was that he inflicted severe physical abuse on Maddy, and, as the abuse was inflicted, Payton listened to her brother's screams. As a result of this act of commission, the children ultimately were denied the care, guidance or control necessary for their physical, educational, moral and emotional well-being, because the respondent was sentenced to

prison and a restraining order and a criminal protective order were put in place barring him from seeing the children.[6] Although the respondent argues that the children were not deprived of the care, guidance or control necessary for their well-being because, in his absence, *the petitioner* provided the children's necessary care, we do not agree. The statute does not exempt a parent who fails to provide the care, guidance or control necessary for his children's well-being simply because some other person steps in during his absence to provide that care. This is especially true where, as here, the reason that parent no longer provides for his children's well-being is that he is imprisoned and restrained from seeing his children because of the severe physical abuse he, personally, administered to one of the children, while the other child helplessly listened to her four year old brother's screams, causing her to suffer lasting emotional distress and anxiety.

On the basis of the foregoing, we conclude that the court properly applied the law and that its legal conclusion that the petitioner established the elements of § 45a-717 (g) (2) (B) is supported by clear and convincing evidence. Accordingly, the respondent's position is without merit.

The respondent next claims that there was insufficient evidence to support the court's conclusion that it was in the best interest of the children to terminate his parental rights. In his brief, the respondent spends considerable time asserting that the court could only have made an informed decision if the petitioner testified about her parenting skills and abilities in this case. He argues that the petitioner should have been required to testify in order to prove that *she* is a fit parent. He also argues: "The flaw in the trial court's analysis is that critical parts of the court's reasoning were not properly supported due to [the petitioner's] failure to testify," and that we should reverse the court's judgment because "[t]here are too many unanswered questions for which only [the petitioner] can answer."[7] We conclude that the court conducted a thorough and proper analysis, using the required statutory factors, and that its conclusion that it was in the best interest of the children for the respondent's parental rights to be terminated was supported by clear and convincing evidence.

Section 45a-717 (h) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by a child-placing agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or child-placing agency and the parent,

and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to the child's parents, any guardian of the child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust such parent's circumstances, conduct or conditions to make it in the best interest of the child to return the child to the parent's home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

In conducting its best interest analysis, the court made the necessary factual findings required by § 45a-717 (h). Reviewing each of the statutory factors, the court made the following relevant findings. Although the department was involved in this case initially, it was the petitioner who filed the petition, so there was no child placement agency involved. Still, in its limited role of assessing the fitness of the petitioner to be the sole guardian of the children, the department opined that it saw no child protection issues with placing the children in the petitioner's sole physical custody. There were criminal and civil "no contact" orders issued against the respondent as to the children. The children have no relationship with the respondent, and Payton is distressed at the mention of the respondent. The children are bonded with the petitioner and her husband. At the time of the trial court's decision, Payton was eight years old, and Maddy was seven years old. The respondent engaged in individual counseling and in an anger management course, but he had not acknowledged the nature or severity of his physical abuse, and he has attempted to minimize or misrepresent it. The respondent has had no contact with the children since March 24, 2012, as a result of court orders, which resulted from the respondent's severe physical abuse of Maddy. Although both the petitioner and the respondent appear to have attempted to coach the children—the petitioner in her attempts have Payton state that the respondent hit Maddy with a "metal" belt and the respondent in his attempts to have Maddy give the police a statement that would blame the family cat and exculpate the respondent—the court concluded that there was no persuasive evidence that the peti-

tioner had acted to the children's detriment.

The court also credited and found "very persuasive" the findings of Kelly F. Rogers, Ph.D., a clinical psychologist who had conducted a psychological evaluation of the respondent and the children at the request of the court. The court stated that Dr. Rogers found Payton to be one of the most anxious children he had ever observed. Additionally, although Dr. Rogers was aware that the respondent had completed an anger management program, he, nonetheless, was against reintroduction of the respondent to the children. Dr. Rogers opined that the respondent has a poor handle on his anger and his expression of his anger. Finally, the court credited Dr. Rogers' opinion that the respondent would be likely to act similarly in the future. The court found that Dr. Rogers' opinions "confirm[ed] that the children would be at serious risk of physical harm if [the respondent] were reintroduced into their lives . . . ."

The court then found that it also would be emotionally damaging to the children to be reintroduced to the respondent, and that Payton, despite years of therapy, still becomes distressed at the mere mention of the respondent. The court stated that Dr. Rogers, the department, and the children's attorney all recommend termination of the respondent's parental rights. In determining that it was in the best interest of the children for the parental rights of the respondent to be terminated, the court found: "The children are entitled to a secure, safe, nurturing home environment [which] [t]hey will not obtain . . . if [the respondent] persists in their lives."

Our review of the court's memorandum of decision reveals that the court examined each of the factors delineated in § 45a-717 (h), as well as considered other important factors approved by our case law, including the children's entitlement to a safe, secure and nurturing home environment, and the court concluded that it was in the children's best interest for the respondent's parental rights to be terminated.[8] We conclude that this determination was supported by clear and convincing evidence.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 10, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The attorney for the minor children has adopted the brief of the petitioner. The Mohegan Tribe of Indians of Connecticut (tribe) filed a motion to intervene in this matter, which the Probate Court granted. The tribe did not oppose the termination of the respondent's parental rights, nor did it participate in this appeal. We refer to the petitioner and the respondent as the parties in this appeal.

[2] As a result of these acts, the respondent was convicted by the Superior

Court of assault in the second degree and risk of injury to a child. On January 11, 2013, the respondent was sentenced to five years incarceration, execution suspended after one year, with three years probation. The court also imposed a protective order barring contact with Maddy, effective until January 11, 2026.

[3] The petitioner also sought termination of the respondent's parental rights on the basis of § 45a-717 (g) (2) (F). The court determined that this ground was not proven because, although the respondent "administered an intentional, nonaccidental severe beating to his son," Maddy did not suffer serious bodily harm. The merits of this ruling are not challenged in this appeal.

[4] The court also explained that a criminal protective order was in place that prevents the respondent from having contact with Maddy at any time prior to January 11, 2026. See footnote 2 of this opinion. Additionally, at the time of the trial court hearing in this matter, there was a civil restraining order in place that the petitioner had secured after a hearing, preventing the respondent from having any contact with her or the children. At the time of the trial in this matter, the respondent had a motion pending in the family court seeking a modification of that order. The family court, however, deferred ruling on the respondent's motion, pending the outcome of this case.

[5] The court also found that the provisions of the Indian Child Welfare Act of 1978; 25 U.S.C. § 1901 et seq.; were satisfied. There is no claim on appeal regarding the propriety of this determination.

[6] The respondent also argues that even if the court properly determined that Maddy was denied care, guidance or control, the court made no such findings concerning Payton. We do not credit this argument. It is clear from reading the court's memorandum of decision in its entirety that it found that the respondent's actions of abusing Maddy, while Payton listened to her younger brother's screams, ultimately resulted in the respondent's incarceration and *the children* being denied the care, guidance or control necessary for their physical, education, moral or emotional well-being. See *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012) ("an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding" [internal quotation marks omitted]).

[7] In this case, the petitioner brought a petition to terminate the parental rights of the respondent, and she bore the burden of proof. We are aware of no statutory or other requirement that a petitioner testify in a termination proceeding in order to meet that burden, and the respondent has not directed us to any such authority.

[8] Although not raised by the parties, we also note that the court stated that it found "beyond a reasonable doubt" that it was in the children's best interest to terminate the respondent's parental rights. Although the standard of proof necessary for such a determination is clear and convincing evidence; see *In re Christina M.*, 90 Conn. App. 565, 583, 877 A.2d 941 (2005) (legislature's choice of proof by clear and convincing evidence in termination of parental rights proceedings is consistent with state and federal constitutional mandates), aff'd, 280 Conn. 474, 908 A.2d 1073 (2006); the court's use of this higher standard of proof could not prejudice the respondent. "The clear and convincing standard of proof is substantially greater than the usual civil standard of a preponderance of the evidence, but less than the highest legal standard of proof beyond a reasonable doubt." (Internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 87, 10 A.3d 100 (2011).