McDONALD, J., dissenting.
The majority concludes that the trial court properly found that the petitioner, the Commissioner of Children and Families, had proven by clear and convincing evidence that Egypt E. had been denied, by reason of the acts of parental commission or omission by the respondents, Morsy E. and Natasha E., the care, guidance, or control necessary for her well-being, as required by General Statutes § 17a-112 (j) (3) (C), on the basis of the respondents' conduct after Egypt was removed from their custody by the Department of Children and Families. Specifically, the majority cites the respondents' failure "to acknowledge and address the cause of [their minor child] Mariam's injuries, which thereby required Egypt to suffer the trauma attendant to prolonged separation from her biological parents' home and deprived her of the care, guidance or control of her biological parents, as well as stability and permanency, for an extended three year period." (Footnote omitted.) Although I have no doubt that the petitioner properly could have relied on the evidence cited by the majority in support of a statutory ground for termination of the respondents' parental rights, that ground is not § 17a-112 (j) (3) (C), the only ground alleged in the operative petition. Indeed, I surmise that the petitioner was aware of this dilemma when she unsuccessfully **537 sought to amend the petition to allege, as an additional ground, the respondents' failure to rehabilitate under § 17a-112 (j) (3) (B), *40 following our decision reversing and remanding this case in the first appeal. See In re Egypt E. , 322 Conn. 231, 140 A.3d 210 (2016) ; see generally In re Gabriella A. , 319 Conn. 775, 800, 127 A.3d 948 (2015) (termination proper when respondent mother's inability to acknowledge impact that her past trauma had on her parenting ability prevented her rehabilitation).
Certainly, in many cases, the petitioner may establish multiple grounds for termination of a respondent's parental rights. See, e.g., In re Brian T. , 134 Conn. App. 1, 3, 38 A.3d 114 (2012) (failure to rehabilitate and denial of care, guidance or control); In re Kezia M. , 33 Conn. App. 12, 19, 21-22, 632 A.2d 1122 (abandonment and lack of parent-child relationship), cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). And, to be clear, the petitioner is not required to present a completely independent factual basis for each ground alleged. The legislature, however, created the separate statutory grounds for termination to address different conduct. The majority's analysis effectively collapses those grounds and renders the legislature's attempt to differentiate conduct meaningless. A parent's failure to rehabilitate while his or her child is in the department's custody necessarily extends the period of separation. Because such separation invariably is harmful to the child, under the majority's analytical framework, the two grounds are established by virtue of the same conduct.
A parental act of commission or omission, however, is one that causes harm to the child's well-being independent of the child's removal and continuing separation from the respondent parent. Compare In re Shane M. , 318 Conn. 569, 589, 122 A.3d 1247 (2015) (sufficient personal rehabilitation requires respondent to correct factors that led to initial commitment, including **538 acknowledgment of underlying personal issues that form basis for department's involvement), and In re Kelly S. , 29 Conn. App. 600, 613-14, 616 A.2d 1161 (1992) (petitioner should have alleged failure to rehabilitate and not parental act of commission or omission when child was removed from parent at birth and, although parent's denial of her serious mental health issues prevented her from benefiting from treatment or providing parental care necessary for her high-risk infant with special needs, there was no proof of specific conduct that caused serious injury to child), with In re Felicia D. , 35 Conn. App. 490, 502, 646 A.2d 862 (parental act of commission or omission established when child suffered serious head injuries from third party while in mother's care, mother failed to take action to protect child and violated terms of protective supervision, and mother failed to acknowledge that likely perpetrator of injuries to child was her husband), cert. denied, 231 Conn. 931, 649 A.2d 253 (1994), and In re Sean H. , 24 Conn. App. 135, 144-45, 586 A.2d 1171 (parental act of commission or omission established when father stabbed mother to death in full view of children, leaving children homeless, with no caregiver, and permanent emotional injury), cert. denied, 218 Conn. 904, 588 A.2d 1078 (1991). Indeed, the placement of a child in a competent foster home while the child was in the petitioner's custody is evidence that the child is being provided the care, guidance, or control necessary for his or her well-being. See, e.g., In re Kezia M. , supra, 33 Conn. App. at 19-20, 632 A.2d 1122 ; In re Kelly S. , supra, at 613-16, 616 A.2d 1161. The majority cannot point to any direct act or omission by the respondents that is specific to Egypt, but, rather, point only to the respondents' failure to accept responsibility for their respective roles in causing harm to Mariam. It is only by focusing on the consequence of that failure, namely, the respondents' continued separation from Egypt, that allows the majority to *41 avoid the fatal flaw of terminating **539 the respondents' parental rights with respect to Egypt based on predictive harm.
The issue of whether the trial court properly denied the petitioner's request to amend the petition to add the ground of failure to rehabilitate is not before this court. This court should not hammer a square peg into a round hole to work around the fact that the petitioner was only able to proceed on the basis of § 17a-112 (j) (3) (C). See, e.g., In re Juvenile Appeal (Anonymous) , 177 Conn. 648, 671-73, 420 A.2d 875 (1979) (requiring strict compliance with statutory criteria for termination of parental rights). To do so would not only permit the petitioner to prevail on an unalleged ground for termination, but would also relieve her of the obligation to prove all of the elements of that ground, namely, that the respondents had been provided with specific court-ordered steps necessary to achieve rehabilitation and that they had failed to attain a sufficient degree of personal rehabilitation as would reasonably encourage a belief that at some future date they could assume a responsible position in Egypt's life. See, e.g., In re Shane M. , supra, 318 Conn. at 591, 122 A.3d 1247. In addition, it collapses the distinctions between the two independent statutory grounds and frustrates the policy objectives that undergird the legislative scheme. I recognize that reversing the judgment in the present case would further delay establishing the stability that is undoubtedly in Egypt's best interest. However regrettable that outcome would be in this case, it is outweighed by the concern that it sets a bad precedent to effectively permit the petitioner to prevail on a ground neither alleged in the petition nor supported by the requisite proof. I am not persuaded that the facts in the present case are so unique that our courts will not be required to apply this precedent in future cases. Accordingly, I respectfully dissent.