******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom McDONALD and ECKER, Js., join, dissenting. I would reverse the Appellate Court's judgment and remand the case to that court with direction to affirm the trial court's denial of the petitions filed by the petitioner, the maternal grandmother of the three minor children at issue, to terminate the parental rights of the respondent father, Daniel W., as to those children.

My disagreement with the Appellate Court centers on what I view as its failure to adequately address the fact that in addition to finding that the petitioner had failed to prove that there was no ongoing parent-child relationship at the time of trial—a ruling the Appellate Court concluded was in error—the trial court also found that the petitioner had failed to prove that "to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child." This latter finding independently would have sufficed to deny the petitions.[1]

My disagreement with the majority is similar. I believe that by focusing on the trial court's isolated and subordinate statement that "[t]here was no evidence presented by the petitioner at trial that would support a claim that additional time to reestablish a relationship with the children would be detrimental," and declaring *that* statement clearly erroneous, the majority has mistakenly avoided the fact that the latter finding was equally dispositive of the trial court's denial of the petitions. In my view, the majority (1) misreads the meaning of the trial court's memorandum of decision; (2) in essence, substitutes its judgment for the trial court's judgment on an issue of fact entrusted to trial judges in our juvenile session; and (3) ultimately awards the petitioner no real practical relief. I, therefore, respectfully dissent.

I

The respondent is serving a total effective sentence of twenty-nine years in prison. The conduct that landed him in prison (sexually abusing his children's young aunt, who lives with them) is reprehensible. His children are not aware of that conduct, but the conduct that they *believe* landed him in prison (beating their mother, which they witnessed) is also reprehensible. It is not difficult to predict that this respondent might well be on the road to having his parental rights terminated. If I had been the trial judge, I might have ruled on the record presented to terminate his parental rights. But no one on this court was the trial judge in this case.

The trial court judge who did address the petitions in the present case was confronted with an issue that is not unusual in juvenile cases in which a parent faces a long term of incarceration: whether and when to ter-

minate the parental rights of the parent-inmate. The reality is that some parents serving lengthy prison sentences may not play any significant role in the upbringing of their children and will not do so because of their own conduct. Without extraordinary effort of their own or active cooperation from the children's caregivers, parent-inmates might have little or no contact with their children at all.

But, as the majority observes, although a court may consider the "inevitable effects of incarceration" on an individual's ability to parent, "the fact of incarceration, in and of itself, cannot be the basis for a termination of parental rights." *In re Elvin G.*, 310 Conn. 485, 514, 78 A.3d 797 (2013); see also *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982). Termination of parental rights implicates a fundamental constitutional right; *In re Yasiel R.*, 317 Conn. 773, 792, 120 A.3d 1188 (2015); and has implications beyond a child's childhood. When parental rights have been terminated, it becomes unlikely that the child and the parent will ever have any relationship, even as adults.

Children, of course, also have rights, as well as a need for a continuous, stable home environment. See *In re Davonta V.*, 285 Conn. 483, 494, 940 A.2d 733 (2008). In some cases, terminating a parent's rights is exactly the right thing for a child's best interests. Perhaps this is such a case. My point in dissenting from the majority should not be read as suggesting that this respondent is a good example of someone who should necessarily play a parental role in the lives of his children, given his conduct and the other circumstances relevant to that determination. My point is that we are not well positioned to make that determination. Rather, this is a difficult decision assigned to our trial court judges sitting in the juvenile session. Specifically, as it relates to the ground asserted and solely pursued by the petitioner in the present case—"no ongoing parent-child relationship"—the trial court is entrusted not just with determining *whether* to terminate a parent's rights, but *when* to do so. In adjudicating this particular ground, as applied to a parent who will be incarcerated throughout a child's childhood, General Statutes § 45a-717 (g) (2) (C) places discretion in the hands of the trial court to determine whether the "effects of incarceration" are indeed "inevitable" under the particular facts of the case, or whether allowing more time for the relationship to establish or reestablish is detrimental to the children's best interest.

II

Section 45a-717 (g) provides in relevant part that "the court may approve a petition terminating . . . parental rights . . . if it finds, upon clear and convincing evidence, that (1) the termination is in the best interest of the child, and (2) . . . (C) there is no ongoing parent-

child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and *to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the child . . . .*" (Emphasis added.) Thus, to satisfy subsection (g) (2) (C) of the statute, the court must find both (1) that the petitioner has established that there is no ongoing parent-child relationship (the "no ongoing parent-child relationship" prong) *and* (2) that permitting the parent further time to establish or reestablish such a relationship would be detrimental to the children's best interests (the "further time" prong). See *In re Jonathon G.*, 63 Conn. App. 516, 525, 777 A.2d 695 (2001). The petitioner must prove both prongs by clear and convincing evidence. See *In re Baby Girl B.*, 224 Conn. 263, 300–301, 618 A.2d 1 (1992).

The trial court in the present case found that the petitioner had failed to establish either prong by clear and convincing evidence. Specifically, the court found "that the petitioner has not demonstrated that there is a lack of parent-child relationship *nor* that it would be detrimental to allow further time for the establishment of the relationship." (Emphasis added.) Regarding the "further time" prong, the trial court stated that "[t]here was no evidence presented by the petitioner at trial that would support a claim that additional time to reestablish a relationship with the children would be detrimental." The trial court also found that terminating the respondent's parental rights would not have been in the best interest of the children.[2]

### III

Rather than awaiting the "further time" contemplated by § 45a-717 (g) (2) (C) and either amending her petitions or bringing new petitions,[3] the petitioner appealed to the Appellate Court, claiming that all three of the trial court's critical findings were clearly erroneous. Specifically, she argued to the Appellate Court that upon the record presented, the trial court should have found by clear and convincing evidence that (1) there was no ongoing parent-child relationship between the respondent and his children; (2) permitting the respondent further time to establish or reestablish such a relationship would be detrimental to the children's best interests; and (3) termination of the respondent's parental rights would be in the children's best interests. The petitioner claimed that if she was correct that the trial court erred in each of its findings, she would be entitled to directed judgments terminating the respondent's rights, rather than merely the new trial the Appellate Court ordered and the majority today affirms. See *In re James T.*, 9 Conn. App. 608, 644, 520 A.2d 608 (1987) ("[f]rom the facts presented in the court's memoran-

dum, to the effect that [the Department of Children and Families (department)] 'clearly established' that it is not in the child's best interest to allow further time to establish a relationship, we conclude that [the department] did meet its burden of clear and convincing proof, and the petition should have been granted").

As the majority notes, the Appellate Court did not address the petitioner's claims on appeal that the trial court's findings were clearly erroneous. Nor did it address at all the trial court's finding that it had not been proven to the court that allowing further time would be detrimental to the children's best interests. Instead, the Appellate Court reversed the trial court's judgments denying the petitions, holding that the trial court's reasoning was legally and logically inconsistent, and that its factual findings were fatally inconsistent. *In re Jacob W.*, 178 Conn. App. 195, 215, 172 A.3d 1274 (2017). Specifically, the Appellate Court held that the trial court had applied the wrong legal test to determine whether there was an ongoing parent-child relationship. Id., 211. It determined that the trial court's findings were legally inconsistent in that the trial court found both "that an ongoing parent-child relationship exists and that unreasonable interference inevitably prevented the respondent from maintaining an ongoing parent-child relationship." (Emphasis omitted.) Id. It also determined that the trial court's findings were factually inconsistent in that the trial court "found both that the grandparents' unreasonable conduct constituted interference and that there was no evidence of unreasonable interference by any person." Id., 215–16. The Appellate Court therefore ordered a new trial on the petitioner's amended petitions. Id., 219.

Although the trial court's memorandum of decision is not entirely clear—and is in one place inconsistent—neither the parties nor the Appellate Court saw fit to ask the trial court to clarify or articulate its ruling.[4] See Practice Book § 66-5; see also *In re Jason R.*, 306 Conn. 438, 460, 51 A.3d 334 (2012) (trial court states burden of proof correctly in articulations to clarify ambiguity in memorandum of decision regarding allocation of burden of proof). Trial court judges operate under tremendous time pressure and without the resources available to this court and the Appellate Court. See K. Stith, "The Risk of Legal Error in Criminal Cases: Some Consequences of the Asymmetry in the Right to Appeal," 57 U. Chi. L. Rev. 1, 61 n.99 (1990) ("appellate judges have more resources [time, staff, and so on than trial judges]"). Thus, a trial court "opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *In re Jason R.*, supra, 453.

More significantly for this case, even if the trial court's decision was in some way unclear, the examples provided by the Appellate Court concerned only the "no

ongoing parent-child relationship" prong. The Appellate Court identified no lack of clarity or inconsistency concerning the "further time" prong, which provides an independent basis for upholding the trial court's decision. See footnote 6 of this dissenting opinion. Therefore, whatever flaws the trial court's opinion might have contained, I had no trouble understanding from my review that the court found that the time had not yet come to terminate the respondent's parental rights. I therefore would not have reversed the trial court's judgments on the ground that the Appellate Court did.

IV

We granted certification in the present case limited to the following issue: "Did the Appellate Court correctly reverse the trial court's judgment denying the custodian's petition to terminate the father's parental rights when it determined that the trial court's judgment was legally and logically inconsistent?" *In re Jacob W.*, 328 Conn. 902, 177 A.3d 563 (2018). The majority does not affirm the Appellate Court's judgment on the "legally and logically inconsistent" rationale of that court, however, but rather, it concludes that in addressing the "no ongoing parent-child relationship" prong, the trial court did not properly take account of the "children's negative feelings toward or lack of memory of the respondent," improperly focusing instead on the respondent's conduct. I do not believe we need to reach that issue, however (and I do not), because even if the trial court considered the "no ongoing parent-child relationship" prong under an incorrect standard, the trial court also found that the petitioner had failed to establish that "to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child."[5] In my view, the trial court's ruling on this second prong sufficed independently to deny the petitions.[6]

The majority does *not* hold, as the petitioner has asked us to hold, that the trial court's ruling on the "further time" prong is clearly erroneous and that, therefore, this prong has in fact been established by clear and convincing evidence. This would be a difficult chore. Determining that a trial court's finding that the *failure to prove* an element by clear and convincing evidence is clearly erroneous is even more challenging an undertaking than contesting any other pedestrian finding.

The majority instead takes on a subordinate statement of the trial court: "[t]here was no evidence presented by the petitioner at trial that would support a claim that additional time to reestablish a relationship with the children would be detrimental." The majority protests that there *was* in fact "evidence presented that was relevant to this question" and that for the trial court to say otherwise was so clearly erroneous that a new trial is warranted. The examples the majority provides,

however, are not in my view *directly* relevant to the finding that further time would not be *detrimental*, but instead relate to whether additional time will be *productive*.

For example, the majority states that there was evidence that the children had intensely negative feelings about the respondent (including feelings that he is a bad parent) or no present feelings at all. The children were not asking to see or speak with him and wanted to have their last name changed. The majority also claims that the trial court did not consider the recommendations of the department, the guardian ad litem, and the children's attorney to terminate the respondent's parental rights, along with whether the little "likelihood" of reestablishing a relationship, and the time it would have taken to do so, would have been detrimental to the children's best interest.

However, I do not agree with the majority that the trial court did not give consideration to all of the evidence the majority cites. In my view, a full and fair reading of the memorandum of decision does not support a conclusion that the trial court "did not accord any effect to," "did not consider," or "took no account of" such evidence. Judges presumptively consider whatever evidence is in front of them. See *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 128, 977 A.2d 772 ("There is nothing in the record that suggests that the court failed to review thoroughly the testimony and evidence submitted to it. . . . [A] judge is presumed to have performed his duty properly unless the contrary appears [in the record]." [Internal quotation marks omitted.]), cert. denied, 294 Conn. 904, 982 A.2d 647 (2009). And here, the trial court *did* expressly find and take note in its memorandum of decision of the children's negative and nonexistent feelings, as well as the department's report and the guardian ad litem's recommendation.

Thus, unlike the majority, I would not so strictly scrutinize the trial court's statement that there was "no evidence . . . that would support a claim that additional time to reestablish a relationship with the children would be detrimental." The majority finds fault with this statement because, in its view, there was relevant evidence. Just because evidence is relevant, however, does not mean it clearly and convincingly establishes a fact. I read the trial court's statement as more likely meaning that the court found "no *direct* evidence"[7] or "no *persuasive* evidence" that more time would be detrimental. "[W]e read an ambiguous trial court record so as to support, rather than contradict, its judgment." (Internal quotation marks omitted.) *In re Jason R.*, supra, 306 Conn. 453. The trial court might not have been *persuaded* by the evidence the majority believes it should have been persuaded by, but instead determined that there was not clear and convincing

evidence that affording additional time would be detrimental to the children's best interests. Although the trial court's analysis may be sparse, it is clear to me from its factual findings that it considered all the evidence in reaching its determination as to the "further time" prong. In my view, the majority has substituted its judgment for the discretion of the trial court and called it clearly erroneous review.

For example, the trial court could have found that, although relevant, the children's statements of dislike of the respondent were not *direct* evidence of further time being detrimental to their best interest.[8] Although a trial court could have found that further time would be detrimental because the children were upset and any further contact with the respondent would serve only to upset them further, it also could have found that those negative feelings were going to exist regardless of whether the respondent's parental rights are terminated, that termination will not affect those feelings, and that additional time might provide an opportunity for the respondent to attempt to repair his relationship with his children. In fact, in many of such "no ongoing parent-child relationship" cases, the present feelings of the children may be negative or nonexistent. That is why the relationship has to be reestablished. And, that is what the additional time is for: things can change. Thus, when the trial court stated that "[t]he statements of dislike by very young children with false information about [the respondent] does not establish by clear and convincing evidence that reestablishing a relationship would be detrimental," I think that means no more than that: the quantum of evidence necessary was not met by the cited evidence.

Further, although the trial court acknowledged that the department had recommended termination of the respondent's parental rights, and that the guardian ad litem found it unlikely that further time would be productive on the basis of the respondent's incarceration and the ongoing protective order preventing contact between him and the children, it did not find this to be direct evidence of detriment if it allowed further time. Lack of productivity does not necessarily equate to detriment, but rather is a factor to consider in determining whether further time would be detrimental. Although the trial court in this case could have found that there was little likelihood of productivity because of the protective order, it also could have found that because the respondent could have sought to modify the protective order or set up some arrangement to have contact with his children, there was a possibility that further time would give the respondent an opportunity to reestablish his relationship with his children. Thus, although relevant, this evidence does not necessarily support a claim that additional time to reestablish a relationship with the children would be detrimental.

It is for the trial court to determine whether there is a lack of productivity and, if so, whether it would be detrimental. The trial court in the present case determined that any predicted lack of productivity in providing additional time did not equate to detriment—in *this* case, at *that* time—especially in light of the fact that the children had been thriving with their grandparents. In my view, this finding is not clearly erroneous. It is important that in reviewing such a finding, we do not substitute our own judgment for the trial court's judgment on an issue of fact entrusted to trial judges in our juvenile session because, especially in cases involving incarcerated parents, it will be a highly fact-bound question whether additional time is not likely to establish or reestablish the relationship. It is not necessarily true that in each of those cases, granting the additional time would be detrimental. Rather, this is, in my view, an issue best left to the trial judge, who is in the best position to weigh the evidence before her or him.

V

Hard cases make bad law. In my view, this case qualifies. The respondent's appalling conduct and its consequences would seem to make it highly unlikely that he will play a significant parenting role in his children's lives. I am concerned, however, that the majority's opinion will be read to require trial court judges to consider the "further time" prong to be more of a predictor of the *likelihood* of reestablishing a relationship. Although I agree that the likelihood that further time will be productive may be a factor in determining whether further time would be detrimental to the children's best interest, I am concerned that judges sitting in our juvenile session will interpret the majority's opinion as equating the probable lack of productivity with detriment.

Thus, in this case, I do not believe that any assumed lack of productivity should not be considered by the trial court, but rather I believe that the trial court *did indeed* consider it and did not find it to be evidence of detriment. There is no requirement that a trial court make a finding of detriment even if there is little foreseeability of reestablishing a relationship. Rather, this is a fact-based issue that will differ under the circumstances of each case. Unless the court's finding is clearly erroneous, we should defer to the trial court's judgment on such an issue. Otherwise, I am concerned that appellate scrutiny will override and overshadow the trial court's prerogative to weigh the evidence and determine not only whether parental rights should be terminated, but when. I am simply unwilling to arrogate to myself the authority to make this determination, and unwilling to so strictly scrutinize the trial court's memorandum of decision in such a pursuit.

I am especially unwilling to do so when the reward

the majority confers upon the petitioner is so meager. The majority's decision today will not hasten the termination of the respondent's parental rights. In fact, the appellate process might very well have delayed it. This is because all the petitioner has gained by prevailing before both the Appellate Court and this court is a new trial on a trio of two year old petitions. A Pyrrhic victory to be sure. Practically, this is no relief at all because any new trial that follows from a reversal of the trial court's denial of the petitions will necessarily have to measure any "ongoing" relationship as of the time of the new trial, not based on the date of the prior trial. See *In re Juvenile Appeal (83-DE)*, supra, 190 Conn. 318 ("the issue of whether termination of parental rights is appropriate must be decided upon the basis of conditions as they appear at the time of trial"). If a new trial on these petitions would be any different from a trial on *new* petitions alleging no ongoing parent-child relationship, that difference is lost on me. See footnote 3 of this dissenting opinion. It is little wonder that that is not the relief the petitioner sought in the Appellate Court, but rather that she sought directed judgments based upon an appellate determination that all of the trial court's findings on the elements of the no ongoing parent-child relationship prong were clearly erroneous.[9] Thus, although my disagreement with the majority is fundamental, it results in little difference to the parties in this case. I therefore respectfully dissent.

[1] The petitioner originally alleged that the children had been denied the care, guidance, or control necessary for their physical, educational, moral, or emotional well-being by reason of acts of parental commission or omission. See General Statutes § 45a-717 (g) (2) (B). In her amended petitions, the petitioner withdrew that allegation and instead alleged abandonment and the lack of an ongoing parent-child relationship as grounds for termination. See General Statutes § 45a-717 (g) (2) (A) and (C). The trial court ruled against the petitioner on both grounds. The only ground relevant to this appeal, however, is the ground of no ongoing parent-child relationship. See General Statutes § 45a-717 (g) (2) (C).

[2] In support of these findings, the trial court made the following subordinate findings: The respondent is the father of three children, Jacob, N, and C. Because of a protective order put into place to prevent the respondent from having contact with the children's maternal aunt, with whom they live, the respondent has not been able to contact his children while in prison. Nevertheless, while incarcerated, he has requested assistance to arrange visits with and updates about his children, and participated in programs to send Christmas gifts to them. Although Jacob initially stated that he missed the respondent, he has since called him a "bad parent." N has stated that he hates the respondent, and C has little to no memory of him. Both Jacob and N have stated that they want no contact with the respondent. The children have bonded with the petitioner, their maternal grandmother, who wants to change their last name. Additionally, the guardian ad litem has opined that termination of the respondent's parental rights is in the children's best interest because there would be no benefit in the children forming a relationship with him, as he will be incarcerated for the remainder of their childhood.

[3] My research identifies nothing that prevents (or would have prevented) the petitioner from pursuing termination on the "no ongoing parent-child relationship" ground, or any other ground, at some point after the trial court ruled against her on the present petitions. This court has held that a party can file an amended or new petition alleging either new grounds or a material change in circumstances so as to avoid both res judicata and collateral estoppel issues. See *In re Baby Girl B.*, supra, 224 Conn. 293–94 ("it makes no difference whether [the Department of Children and Families] chooses to honor its obligation by filing an amended petition or by filing a second

independent petition alleging [a material change in circumstances or] new grounds for termination"); see id., 294 n.19; *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318–19, 460 A.2d 1277 (1983) ("[T]he doctrines of res judicata and collateral estoppel ordinarily afford very little protection to a parent who has once successfully resisted an attempt to terminate his [or her parental] rights to a child. . . . An adjudication that a ground for termination did not exist at one time does not mean such ground has not arisen at a later time." [Citations omitted.]). This is because § 45a-717 (g) (2) (C) looks at whether there is a *present* ongoing relationship, which necessarily must be assessed as of the time of trial. See *In re Juvenile Appeal (83-DE)*, supra, 318 ("the issue of whether termination of parental rights is appropriate must be decided upon the basis of conditions as they appear at the time of trial").

[4] In the absence of an articulation, we do not know if the trial court's memorandum of decision truly is inconsistent, or if the legal "inconsistencies" are arguments in the alternative and the factual "inconsistencies" are scrivener's errors. Because we must read a memorandum of decision as a whole; *In re Jason R.*, 306 Conn. 438, 453, 51 A.3d 334 (2012); and because there is a presumption that the trial court properly applied the law and considered the facts; *State* v. *Henderson*, 312 Conn. 585, 598, 94 A.3d 614 (2014); *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992); we should construe these "inconsistencies" to conform to the trial court's holding.

[5] The majority states that the trial court's holding under the dispositional phase of the proceedings that termination was not in the children's best interest also "was affected by its application of an incorrect legal test during the adjudicatory phase" and by these inconsistencies. These concerns do not apply to the trial court's finding under the "further time" prong. The "best interest" analysis under the second prong of § 45a-717 (g) (2) (C) is separate and distinct from the "best interest" analysis under subsection (g) (1).

[6] Citing *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 675–76, 420 A.2d 875 (1979), the majority indicates that "[o]nly if" the trial court determines that the petitioner has proven the lack of an ongoing parent-child relationship "may it turn to the second part of the inquiry . . . ." The majority focuses on a single sentence from *In re Juvenile Appeal (Anonymous)*: "The 'best interests' standard . . . comes into play only if it has been determined that no ongoing parent-child relationship exists, in order to decide whether allowance of further time for the establishment or reestablishment of the relationship would be contrary to the child's best interests." (Emphasis omitted.) Id. The majority and the Appellate Court have interpreted this sentence to mean that the trial court cannot and should not address the "further time" prong unless the "no ongoing parent-child relationship" prong has been established. If there is an ongoing relationship, then there is no reason or purpose for affording further time to establish such a relationship. Thus, according to the majority, if this court determines that the trial court's finding as to the first prong was clearly erroneous, it cannot affirm the trial court's decision on the basis of the second prong, but rather must remand the case for a new trial.

I do not agree with such an interpretation of *In re Juvenile Appeal (Anonymous)*, especially when reading the sentence at issue in context. In *In re Juvenile Appeal (Anonymous)*, the juvenile court found there to be no meaningful ongoing parent-child relationship, and, on appeal, the Superior Court upheld that decision, "characteriz[ing] the decision of the Juvenile Court as holding that 'it was in the best interest of said child that the petition for termination of parental rights be granted.' " *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 675. In doing so, the Superior Court combined the first and second prongs of § 45a-717 (g) (2) (C), upholding the juvenile court's finding of no meaningful ongoing parent-child relationship under the first prong because it was in the children's best interest. This court in *In re Juvenile Appeal (Anonymous)* was holding that the Superior Court improperly upheld the juvenile court's finding as to the first prong on the basis of the child's best interest, which could be considered only as a part of the second prong. Based on this context, I do not read the sentence cited by the majority as prohibiting a trial court from considering the "further time" prong unless the "no ongoing parent-child relationship" prong is first established. Rather, this sentence establishes simply that "best interest" is considered only as part of the second prong, not the first prong.

If the cited sentence in *In re Juvenile Appeal (Anonymous)* is read to mean that the trial court cannot consider the second prong ("further time")

before it has found the first prong to be established, in my view this court should overrule that holding. Although it is obvious that the trial court may not *grant* a termination petition if it does not find the lack of an ongoing parent-child relationship, because both prongs must be established, the petition can fail under either prong. Similarly, even if the trial court finds there is not clear and convincing evidence of no ongoing parent-child relationship, there is no reason why the court cannot go on to determine whether further time would be detrimental as an alternative reason for denying the petitions. See *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 724, 183 A.3d 1164 (2018) ("whenever feasible, the far better practice would be for the trial court to fully address the merits of all theories litigated, even those that are legally inconsistent").

[7] In my view, an example of what would be direct evidence (or at least more direct evidence) might be where termination will lead to a different placement or some other contingency. But here, these children will be with the grandparents, regardless.

[8] The majority takes issue with the trial court's statement that "[t]he statements of dislike by very young children with false information about [the respondent] does not establish by clear and convincing evidence that reestablishing a relationship would be detrimental." According to the majority, the trial court improperly discounted "the negative feelings of the children on the basis of the grandparents' alleged 'interference,' " and, if properly considered, these negative feelings would have been at least some evidence that further time would be detrimental, making the trial court's finding of "no evidence" clearly erroneous. The problem with this argument, however, is that it presupposes that the children's negative feelings necessarily equate to evidence that further time would be detrimental to their best interest. As explained previously, the children's negative feelings reasonably can be considered not to be direct evidence of detriment, but rather are open to interpretation by the trial court.

[9] In her appeal to the Appellate Court, the petitioner specifically asked the court to direct judgments terminating the respondent's parental rights on the ground that the trial court's findings as to § 45a-717 (g) (2) (C) were clearly erroneous because its subordinate findings establish that there was no ongoing parent-child relationship and that allowing further time would be detrimental to the children's best interest. Although the petitioner has repeated this argument before this court as an alternative ground for affirming the judgment of the Appellate Court, she has not specifically requested directed judgments from this court.