******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# IN RE LUCIA C.*
## (AC 44807)

# IN RE CHRISTIAN C. ET AL.
## (AC 44809)

Prescott, Alexander and Harper, Js.

*Syllabus*

The respondent father appealed to this court from the judgments of the trial court terminating his parental rights with respect to his three minor children, L, C, and A. Although the children's mother lived with the father and the children, the father had been the children's primary caregiver. After his conviction of sexual assault of a five year old child, for which he was sentenced to twenty-five years of incarceration, the children remained in the care and custody of the mother, who suffers from significant mental health issues. The Department of Children and Families thereafter began to receive reports that the children were abused, neglected, inadequately supervised and had inadequate shelter in their mother's care. The petitioner, the Commissioner of Children and Families, filed petitions for the termination of the parental rights of the father and the mother as to A, L and C. The mother consented to the termination of her parental rights. *Held* that the trial court correctly concluded that, in accordance with the applicable statute (§ 17a-112 (j) (3) (C)), the respondent father had denied his children, by an act or acts of comission or omission, the care, guidance, or control necessary for their physical, educational, moral, or emotional well-being: as a result of the father's criminal action and prolonged incarceration, the father left his children to be abused, neglected and without adequate shelter in the custody of their mother; moreover, following the father's incarceration, each child has suffered from mental health and behavioral issues, which have required them to receive therapy and support services and to be medicated, and L and C have been hospitalized and have received psychiatric treatment; accordingly, the court reasonably determined that the cumulative effect of the evidence justified its conclusion that the father's prolonged incarceration caused his children to be neglected by their mother and, in turn, deprived them of the care, guidance, or control necessary for their well-being.

Argued January 12—officially released March 14, 2022**

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Waterbury, Juvenile Matters, and tried to the court, *Woods, J.*; judgments terminating the respondents' parental rights, from which the respondent father filed separate appeals to this court; thereafter, this court consolidated the appeals. *Affirmed.*

*David E. Schneider, Jr.*, assigned counsel, for the appellant in both appeals (respondent father).

*Evan M. O'Roark*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee in both appeals (petitioner).

*Opinion*

PRESCOTT, J. In these consolidated appeals,[1] the respondent father, Eddie C., appeals from the judgments of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights as to his three minor children, Lucia C., Christian C., and Alexander C. The respondent claims that the court improperly concluded, in accordance with General Statutes § 17a-112 (j) (3) (C), that he had denied his children, by an act or acts of commission or omission, the care, guidance, or control necessary for their physical, educational, moral, or emotional well-being.[2] In connection with his claim, the respondent argues that the court improperly "speculat[ed]" that, because he was incarcerated following his conviction of sexual assault of a minor, his absence from his children's lives and his children being left in the custody of their mother caused his children to be denied the care, guidance, or control necessary for their well-being. We affirm the judgments of the trial court.

The following facts, as found by the court or as otherwise undisputed in the record, and procedural history are relevant to our resolution of this appeal. Prior to his incarceration, the respondent was his children's primary caregiver. The respondent housed, fed, clothed, and financially supported his children. In addition to providing for their basic necessities, the respondent played with his children, read to them, and played an active role in their educational and extracurricular activities. By contrast, the children's mother, Ashley C. (mother), who suffers from significant mental health issues and has been diagnosed with oppositional defiant disorder, did not show significant interest in engaging with or parenting her children, despite residing in the same home with the children. Prior to the respondent's arrest, the family was not involved with the Department of Children and Families (department).

In October, 2015, the respondent was convicted of the sexual assault of a five year old extended family member and was sentenced to twenty-five years of incarceration. His maximum release date is November 7, 2039. Following his arrest, the respondent was "afraid" that the safety of his children would be compromised in the care of their mother.

After the respondent was incarcerated, Lucia, Christian, and Alexander initially remained in the care and custody of their mother. Thereafter, the department began to receive reports of the abuse, neglect, inadequate supervision, and inadequate shelter of the children in their mother's care. Specifically, the department received reports alleging that the mother physically and verbally abused the children, including beating them, choking them, calling them by derogatory names, and threatening to abandon them. In March, 2016, for exam-

ple, Christian was hospitalized due to behavioral issues and reported to medical staff that his mother repeatedly choked him following his misbehavior and told him that she would "put him in foster care and get a new kid." Additionally, the department received reports that their home had no food or electricity and was in an unsanitary condition. During this time, the department also received reports documenting substantial deterioration in the children's emotional well-being and hygiene.[3] The mother declined to engage in parenting support services to which she had been referred by the department. Due to her noncompliance, she was discharged from these services. In sum, while the children were in her care, the mother subjected them to abuse, neglect,[4] and housing instability.

On June 7, 2016, the petitioner filed neglect petitions with respect to the three children. On September 15, 2016, the petitioner filed ex parte applications for orders of temporary custody (OTC) of the children, which the court, *Turner, J.*, granted. The court vested temporary custody of all three children in the petitioner. On October 14, 2016, the court vacated the existing OTC, adjudicated the children neglected, and committed Lucia and Christian to the care and custody of the petitioner. The court ordered that Alexander remain in the custody of his mother subject to a nine month period of protective supervision by the department.

In February, 2017, the department received a report concerning Alexander's hygiene and behavior at school and an allegation that Alexander had sustained a suspicious injury. The petitioner subsequently filed an application for an ex parte OTC of Alexander, which the court, *Maronich, J.*, granted, as well a motion to modify the order of protective supervision to an order of commitment of Alexander to the care and custody of the petitioner. On March 6, 2017, following a contested trial, the court, *Hon. Thomas F. Upson*, judge trial referee, vacated the OTC with respect to Alexander. On June 19, 2017, however, the court, *Turner, J.*, granted the motion to modify the order of protective supervision of Alexander and committed Alexander to the care and custody of the petitioner by agreement of the parties.

After removing them from the care and custody of their mother, the department placed Lucia and Alexander in various foster homes. Before eventually placing Christian in the foster home of his paternal grandfather and paternal stepgrandmother,[5] the department initially placed Christian in a residential treatment program, and he subsequently was hospitalized on numerous occasions to receive inpatient psychiatric care.[6] Following the respondent's incarceration, Christian has suffered from significant mental health issues, including adjustment disorder, attention deficit hyperactivity disorder, oppositional defiant disorder, and post-traumatic stress disorder, for which he receives therapy and is prescribed

medication. Likewise, following the respondent's incarceration, Lucia has been hospitalized in order to receive psychiatric care, and she has been diagnosed with acute adjustment disorder and anxiety for which she receives therapy and is prescribed medication. Following the respondent's incarceration, Alexander has struggled, and continues to struggle, with behavioral issues and emotional regulation, for which he receives therapy, receives other support, and is prescribed medication. Specifically, he exhibits impulsivity, aggression, and destructive behaviors and has been diagnosed with attention deficit hyperactivity disorder and trauma specific disorder. With respect to each child, the record reflects a significant deterioration of their well-being following the respondent's incarceration.[7]

In June, 2019, the petitioner filed petitions for the termination of the parental rights of the respondent and the mother as to Lucia, Christian, and Alexander. The mother consented to the termination of her parental rights as to each of the three children, which the court, *Grogins*, *J.*, accepted on November 27, 2019. In May and December, 2019, the respondent filed two separate motions to revoke the commitment of Lucia and Alexander to the care and custody of the petitioner and to transfer guardianship of Lucia and Alexander to the care and custody of his mother, their paternal grandmother.

The court, *Woods*, *J.*, conducted a trial concerning the petitions for the termination of the respondent's parental rights and the motions to transfer guardianship of Lucia and Alexander to the care and custody of their paternal grandmother over a span of several nonconsecutive days between December, 2019, and March, 2021. In a memorandum of decision dated April 30, 2021, the court terminated the respondent's parental rights as to Lucia, Christian, and Alexander, denied the respondent's motions to transfer guardianship of Lucia and Alexander to their paternal grandmother, and granted the respondent posttermination visitation with the children. The court determined that the respondent, by acts of parental commission or omission, had denied his children the care, guidance, or control necessary for their physical, educational, moral, and emotional well-being. The court's memorandum of decision is not entirely clear as to which acts of commission or omission the court identified. In context, however, we read the memorandum of decision to accept the petitioner's primary argument that, as a result of his sexual assault of a minor and consequent incarceration, the respondent left his children to be abused and neglected in the custody of their mother and, in turn, denied his children the care, guidance, or control necessary for their well-being. Ultimately, the court terminated the respondent's parental rights as to each child. This appeal followed.

We begin by setting forth the applicable standard of review. "Although the trial court's subordinate factual

findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . To the extent we are required to construe the terms of § 17a-112 (j) (3) (C) or its applicability to the facts of this case, however, our review is plenary." (Citations omitted; internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 525–26, 175 A.3d 21, cert. denied sub nom. *Morsy E.* v. *Commissioner, Connecticut Dept. of Children and Families*, U.S. , 139 S. Ct. 88, 202 L. Ed. 2d 27 (2018).

We next set forth the relevant legal principles that govern our review of the respondent's claim. "Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence.[8] The commissioner . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. . . . Subdivision (3) of § 17a-112 (j) carefully sets out . . . [the] situations that, in the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun." (Citation omitted; footnote added; internal quotation marks omitted.) Id., 526–27.

"[Section] 17a-112 (j) (3) (C) . . . provides that a ground for termination of parental rights is established when a trial court finds, by clear and convincing evidence, that the child [at issue] has been denied, by reason of an act or acts of parental commission or omission including, but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being, except that nonaccidental or inadequately explained serious physical injury to a child shall consti-

tute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights . . . ."[9] (Internal quotation marks omitted.) Id., 527; see General Statutes § 17a-112 (j) (3) (C). "[T]he petitioner [thus must] show that, as a result of the . . . acts of [parental] commission or omission, the care, guidance or control necessary for the child's well-being has been denied." (Emphasis omitted; internal quotation marks omitted.) *In re Egypt E.*, supra, 327 Conn. 527. Because the termination of parental rights is "a most drastic and permanent remedy"; id., 528; the petitioner "generally . . . [must show], by clear and convincing evidence, that some type of physical or psychological harm to the child already has occurred." Id. "The [deprivation of care, guidance or control] statute rests on two distinct and often contradictory interests [of the child]. The first is a basic interest in safety; the second is the important interest . . . in having a stable family environment." (Internal quotation marks omitted.) *In re Payton V.*, 158 Conn. App. 154, 161–62, 118 A.3d 166, cert. denied, 317 Conn. 924, 118 A.3d 549 (2015).

As our Supreme Court has explained, "the language of § 17a-112 (j) (3) (C) and the decisions interpreting it make clear that the types of parental behaviors and resultant harms that the statute is intended to reach are *many and varied*. By virtue of the language, act or acts of parental commission or omission, both positively harmful actions of a parent and a parent's more passive failures to take action to prevent harm from occurring are encompassed by § 17a-112 (j) (3) (C). The contemplated harmful acts include, but explicitly are not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, and the resultant harm to a child's well-being may be physical, educational, moral or emotional . . . ." (Emphasis added; internal quotation marks omitted.) *In re Egypt E.*, supra, 327 Conn. 528; see also General Statutes § 17a-112 (j) (3) (C). "[Section] 17a-112 (j) (3) (C) clearly was drafted in a manner such as would give it a *broad and flexible range*." (Emphasis added.) *In re Egypt E.*, supra, 529.

In *In re Egypt E.*, our Supreme Court reviewed the various decisions in which this court[10] has concluded, in light of "§ 17a-112 (j) (3) (C), or the correspondent statute for proceedings in the Probate Court . . . that an act of parental commission or omission had been proven"; id.; and noted that these decisions "demonstrate[d] [§ 17a-112 (j) (3) (C)'s] *wide applicability*. Recognized acts of parental commission or omission under [§ 17a-112 (j) (3) (C)] have included physically assaulting a child, resulting in severe injury . . . sexually abusing a child . . . attempting to suffocate a child . . . exposing a child to a parent's [own] erratic, violent and mentally ill behaviors . . . threatening and yelling obscenities at a child . . . severely neglecting a child's

developmental and nutritional needs . . . physically and emotionally abusing siblings or killing the child's other parent . . . abusing a sibling in a child's presence or earshot and ordering the child to participate in such abuse . . . refusing to believe a child's reports of sexual abuse and blaming the child for her foster care placement . . . and engaging in repeated criminal behavior resulting in prolonged incarceration, with little effort to engage in visitation with a child.[11] . . . [*T*]*he statute frequently has been applied to parents who have failed to protect their children from abuse inflicted by third parties* and failed to acknowledge that such abuse has occurred. . . . See . . . *In re Sheena I.*, 63 Conn. App. 713, 723, 778 A.2d 997 (2001) [(awareness by mother of father's neglect and abuse of children, and failure by mother to take steps to prevent abuse while children were in her physical custody constituted acts of commission or omission)] . . . *In re Christine F.*, [6 Conn. App. 360, 362, 364, 505 A.2d 734 (failure of mother to protect child from sexual abuse by father constituted act of commission or omission), cert. denied, 199 Conn. 809, 508 A.2d 770 (1986)] . . . . [*T*]he children at issue [in this court's relevant decisions] suffered physical, emotional and/or psychological harm as a result of their parents' various acts of commission or omission." (Citations omitted; emphasis added; footnote added; footnote omitted.) Id., 529–30.

Our Supreme Court in *In re Egypt E.* specifically cited *In re Brian T.*, 134 Conn. App. 1, 18, 38 A.3d 114 (2012), and noted that, in that case, this court recognized as acts of commission or omission under the corresponding Probate Court statute to § 17a-112 (j) (3) (C); see General Statutes § 45a-717; a respondent father's "engag[ement] in repeated criminal behavior resulting in prolonged incarceration, with little effort to engage in visitation with [his] child." *In re Egypt E.*, supra, 327 Conn. 530. In *In re Brian T.*, the respondent appealed from the judgment of the trial court terminating his parental rights as to his son. *In re Brian T.*, supra, 3. The respondent claimed, inter alia, that the court improperly determined that he had denied his child, by reason of an act or acts of commission or omission, the care, guidance, or control necessary for the child's well-being; see id., 3, 17, 20; under the Probate Court counterpart to § 17a-112 (j) (3) (C). See id., 7, 9.

During the first seven years of his child's life, the respondent in *In re Brian T.* served two separate prison sentences for a total period of approximately six years and one month. Id., 4–6, 14. Although the court determined that the respondent had "sustained a relationship, of sorts, with the child through cards, letters, and telephone contact"; (internal quotation marks omitted) id., 7; the respondent had scheduled only one fifteen minute visit with his child while he was incarcerated. Id., 18. The court ultimately determined, by clear and

convincing evidence, that the respondent's "criminal acts, incarceration and lack of attention he paid to the child during the child's infancy was sufficient to" establish that the respondent had denied his child, by acts of parental commission or omission, the child's physical, educational, moral, or emotional well-being. Id., 7.

On appeal, this court observed that "[t]he [trial] court's conclusion rested, in part, on its express findings that the respondent's extensive criminal history, prolonged incarceration and the scheduling of only one visitation with the child for a period of fifteen minutes during the respondent's incarceration were sufficient to demonstrate the respondent's denial of parental care, guidance or control for the child's well-being." (Footnote added.) Id., 18. We noted that the respondent did not "point [this court] to any claimed clear error in the court's factual findings relating to the grounds of termination, nor d[id] he point [this court] to any error of law" in the court's conclusion that, in light of its factual findings, the respondent had deprived the child of the care, guidance, and control necessary for his child's well-being. Id. Accordingly, this court concluded, "[i]n light of the record before [it], the court could have reasonably concluded that the respondent deprived the child [of] the care, guidance and control necessary for the child's [physical, educational, moral and emotional] well-being" by acts of commission or omission. Id.

In the present case, the respondent was convicted of the sexual assault of a minor extended family member and was sentenced to twenty-five years of incarceration. Prior to the respondent's incarceration, the record reflects that the respondent housed, fed, clothed, financially supported, and cared for his children. As a result of his criminal action, and as he feared after his arrest, the respondent left his children to be abused, neglected, and without adequate shelter in the custody of their mother. While the respondent remained incarcerated, the court adjudicated the children neglected and committed them to the care and custody of the petitioner. Subsequently, the department placed the children in foster homes and, in the case of Christian, residential treatment programs. Consequently, following the respondent's incarceration, each child has suffered from mental health and behavioral issues, which have required them to receive therapy and support services and to take medication and which have required Lucia and Christian to be hospitalized and receive psychiatric treatment. In light of these facts, the trial court, citing *In re Brian T.*, determined that, by leaving his children in the custody of their mother due to his criminal act and consequent incarceration, the respondent had denied his children the care, guidance, or control necessary for their physical, educational, moral, or emotional well-being by reason of acts of parental commission or omission. See *In re Brian T.*, supra, 134 Conn. App. 18.

We conclude that the court reasonably determined, in light of the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its ultimate conclusion; see *In re Egypt E.*, supra, 327 Conn. 526; that the respondent's sexual assault of a minor child, which resulted in his consequent conviction and prolonged incarceration, caused his children to be abused and neglected by their mother and, in turn, deprived them of the care, guidance, or control necessary for their well-being. The absence of the respondent from the lives of his children, which resulted from his criminal conviction and prolonged incarceration; see, e.g., *In re Brian T.*, supra, 134 Conn. App. 18;[12] caused the respondent to "[fail] to protect [his] children from abuse [and neglect] inflicted by" their mother. *In re Egypt E.*, supra, 530. Put differently, but for the criminal act of the respondent—his sexual assault of a minor—he would not have been incarcerated, his children would not have been left without a reliable caregiver, his children would not have been left in the care and custody of their mother, and, thus, his children would not have been neglected by their mother. But for the respondent's criminal action and consequent absence from his children's lives, his children likely would not have been abused and neglected by their mother and deprived of the parental care, guidance, and control necessary for their physical, educational, moral, and emotional well-being.

Thus, although the respondent did not commit an act of physical or sexual abuse against one or more of his children, his sexual abuse of another child, nonetheless, had devastating effects on his own children because it resulted in his incarceration and left his children in the care of someone who later abused and neglected them. As our Supreme Court has explained and as we have noted earlier in this opinion, "the types of parental behaviors and resultant harms that the statute is intended to reach are *many and varied*." (Emphasis added.) Id., 528. Accordingly, we reject the respondent's argument that the court improperly "speculat[ed]" that his absence from his children's lives due to his incarceration caused his children to be deprived of the parental care, guidance, and control necessary for their well-being in the care of their mother. Because the evidence in the record, "construe[d] . . . in a manner most favorable to sustaining the judgment of the . . . court"; (internal quotation marks omitted) id., 526; is sufficient to support the court's conclusion that the petitioner established the "broad and flexible"; id., 529; statutory ground of parental commission or omission, the respondent's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142

(b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 14, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent filed two separate appeals, Docket Nos. AC 44807 and AC 44809, from the judgments of the trial court. Pursuant to Practice Book § 61-7 (b) (3), this court sua sponte ordered that the appeals be consolidated and that the respondent and the petitioner each file a single, consolidated brief and appendix.

[2] The respondent also claims on appeal that the court (1) violated his right to an "in person trial" by conducting a portion of the proceedings over the Microsoft Teams platform, rather than conducting the trial in court and in person, and (2) violated his right to due process of law by precluding him from physically confronting witnesses in court and in person when it conducted a portion of the proceedings over the Microsoft Teams platform. These claims are virtually identical to the claims that this court rejected in *In re Annessa J.*, 206 Conn. App. 572, 584–88, 260 A.3d 1253, cert. granted, 338 Conn. 904, 258 A.3d 674 (2021), cert. granted, 338 Conn. 905, 258 A.3d 675 (2021), and cert. granted, 338 Conn. 906, 258 A.3d 90 (2021). Although we note that our Supreme Court has granted certification to appeal in *In re Annessa J.*, "prior to a final determination of the cause by our Supreme Court, a decision of this court is binding precedent on this court." *State* v. *Andino*, 173 Conn. App. 851, 875 n.12, 162 A.3d 736, cert. denied, 327 Conn. 906, 170 A.3d 3 (2017). Thus, in accordance with this court's decision in *In re Annessa J.*, we reject the respondent's additional claims.

[3] In an affidavit dated September 15, 2016, which the court admitted into evidence during the termination of parental rights trial, a department social worker averred that she had received multiple reports from staff members of Lucia's school concerning Lucia's emotional well-being, behavior, and hygiene while she was in the care and custody of her mother. The social worker also averred that she had received a report from the principal of Christian's school that Christian exhibited emotional distress and difficulty in school while he was in the care and custody of his mother, as well as a report from a clinical social worker from Yale-New Haven Hospital concerning Christian's behavior and hygiene.

[4] At oral argument before this court, the respondent's counsel acknowledged that, in their mother's care while he was incarcerated, the children were neglected.

[5] The home of Christian's paternal grandfather and paternal stepgrandmother is licensed as a family and community ties foster home.

[6] At the time of trial, each child resided in a separate foster home. Lucia resided in her foster home somewhat consistently since 2018 and has developed a trusting, positive relationship with her foster family, who have provided her with love and stability. Christian resided with his paternal grandfather and paternal stepgrandmother somewhat consistently since 2018. His paternal grandfather and paternal stepgrandmother have expressed a desire to adopt Christian, and Christian has expressed a desire to remain in their care. Alexander has developed a trusting, loving relationship with his foster mother, who has expressed an interest in adopting him, and the other children in his foster home, whom Alexander considers siblings.

[7] In *In re Kelly S.*, 29 Conn. App. 600, 613–16, 616 A.2d 1161 (1992), a case that the respondent heavily relies on in his appellate brief, this court determined that predictive neglect is insufficient to satisfy the commission or omission statutory ground for the termination of parental rights. Put differently, the commission or omission statutory ground "does not permit the termination of parental rights *based on speculation as to what acts may befall a child.*" (Emphasis added.) Id., 614. In the present case, however, and unlike in *In re Kelly S.*, the children already have been deprived of the care, guidance, or control necessary for their well-being and have suffered psychological injury as a result of the respondent's actions.

[8] "Clear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *In re Jacob*

*W.*, 178 Conn. App. 195, 204–205, 172 A.3d 1274 (2017), aff'd, 330 Conn. 744, 200 A.3d 1091 (2019).

[9] "To terminate parental rights, the court also must find that reasonable efforts have been made to reunify a parent and child, unless the parent is unable or unwilling to benefit from those efforts or the court finds that such efforts are unnecessary; General Statutes § 17a-112 (j) (1); and that termination of parental rights is in the best interest of the child. General Statutes § 17a-112 (j) (2)." *In re Egypt E.*, supra, 327 Conn. 509 n.1. The respondent has not challenged these additional required findings in the present appeal.

[10] Our Supreme Court noted that it "ha[d] not had much occasion to interpret § 17a-112 (j) (3) (C) or the corresponding Probate Court statutes"; *In re Egypt E.*, supra, 327 Conn. 529 n.17; outside of its decisions in *In re Valerie D.*, 223 Conn. 492, 512–13, 613 A.2d 748 (1992) (determining that legislature did not intend for Probate Court statutory counterpart to § 17a-112 (j) (3) (C) to apply to acts of parental commission or omission predating birth of child), and *In re Theresa S.*, 196 Conn. 18, 26–27, 491 A.2d 355 (1985) (holding that parent's life-threatening attacks of children, caused by psychotic episode, provided overwhelming evidence of acts of parental commission or omission adversely affecting well-being of children). See *In re Egypt E.*, supra, 529 n.17.

[11] "[Our Supreme Court] note[d] that, although *some of the . . . behaviors*, *standing alone*, *satisfied § 17a-112 (j) (3) (C)*, most were considered to do so in combination with other parental acts or omissions." (Emphasis added.) *In re Egypt E.*, supra, 327 Conn. 529 n.18.

[12] We acknowledge that *In re Brian T.* is not on all fours with the present case because, in determining that the petitioner had established the commission or omission statutory ground, the trial court, in part, relied on the fact that the respondent had failed to request visitation with his child. See *In re Brian T.*, supra, 134 Conn. App. 18. The record in the present case makes clear that the respondent sought visitation with his children. In the present case, however, the respondent, *in addition to* being absent from his children's lives due to his criminal act and consequent incarceration, left the children in the custody of an entirely insufficient caregiver who abused and neglected them. Further, although the respondent in the present case does not have an extensive criminal history, his sentence for the crime he did commit has the same practical effect on his children as did the respondent's extensive criminal history in *In re Brian T.*